JOHN C. MOAKLEY *vs.* MAURICE T. EASTWICK & others.[1]

Plymouth. November 7, 1995. - June 25, 1996.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, O'CONNOR, GREANEY, & FRIED, JJ.

*Art Preservation Act. Statute,* Retrospective statute. *Emotional Distress. Intentional Conduct. Negligence,* Emotional distress.

Discussion of the provisions of G. L. c. 231, § 85S, inserted by St. 1984, c. 488, § 1 (effective April 7, 1985), a so-called art preservation act. [55-57]

General Laws c. 231, § 85S, does not apply retrospectively to works of art that were created and that permanently left the artist's possession before the effective date of the statute, where the language employed and the legislative history supported the conclusion that the Legislature did not intend the protections of the act to be applicable to preexisting works of fine art. [57-60]

The plaintiff in a civil action did not sustain his burden of proof on claims of intentional and negligent infliction of emotional distress arising from the partial destruction of a work of fine art that the plaintiff had created but that was not entitled to the protection of G. L. c. 231, § 85S. [60-61]

CIVIL ACTION commenced in the Superior Court Department on November 9, 1989.

The case was heard by *Catherine A. White,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*George P. Field (Jennifer McGuone Lantz* with him) for the plaintiff.

*Bradley A. MacDonald & Robert C. Cooley (James R. Dyer* with them) for the defendants.

*Scott Harshbarger,* Attorney General, *& James Milkey & Mary Murphy-Hensley,* Assistant Attorneys General, for the Attorney General, amicus curiae, submitted a brief.

GREANEY, J. We allowed the plaintiff's application for direct appellate review to resolve issues under the so-called

---

[1]Grace Bible Church and Grace Bible Church Fellowship, Inc.

Art Preservation Act, G. L. c. 231, § 85S (Act), inserted by St. 1984, c. 488, § 1, effective April 7, 1985. By his complaint in the Superior Court, the plaintiff, John C. Moakley, an artist, brought a claim under the Act against the defendants, the Grace Bible Church Fellowship, Inc., Grace Bible Church (church), and Maurice T. Eastwick, the pastor of the church, and additional claims for intentional and negligent infliction of emotional distress. The plaintiff sought a declaration of his rights, injunctive relief, and the assessment of damages. The plaintiff appeals from a judgment entered in favor of the defendants after a bench trial before a judge in the Superior Court.

The dispute concerns a work of art, created by the plaintiff, which is located on the grounds of the former First Parish Unitarian Church in East Bridgewater, now owned by the church. The church argued that the Legislature did not intend that the Act's provisions were to be applied to works of fine art created before the law became effective. Stating that the content of the work was "problematic from a religious standpoint," the church also contended that, if the work were protected by the Act, and its provisions required the church to maintain the work on its property, then the Act, as applied, would violate the church members' constitutional rights to freedom of religion and worship, as guaranteed by the First Amendment to the United States Constitution, as well as art. 46, § 1, of the Amendments to the Massachusetts Constitution and art. 2 of the Declaration of Rights of the Massachusetts Constitution. The judge concluded that the plaintiff's work was protected by the Act, but that the "application of the statute to the defendants [would offend] [art.] 2." The plaintiff asks us to reverse the judgment for the defendants, to declare that his work is protected by the Act, to enjoin the church permanently from tampering with the work, and to assess damages for tortious infliction of emotional distress. We conclude that the Act does not apply to the plaintiff's work and that he is not entitled to damages on his tort claims. We modify the judgment to make an appropriate declaration of rights and affirm its remaining terms.[2]

The facts found by the judge are as follows. In 1971, the

[2]We heard oral argument on November 7, 1995. After argument, it was ascertained that the defendants had not complied with Mass. R. Civ. P. 24 (d), 365 Mass. 769 (1974), and G. L. c. 231A, § 8 (1994 ed.). The rule and

plaintiff, an established sculptor and potter, was commissioned by the pastor of the First Parish Unitarian Church in East Bridgewater to create and install a work of art on church property. The result of this commission consisted of a sixty-eight foot long concrete block wall to which the plaintiff affixed a mural composed of approximately 600 separate ceramic tiles, organized into ten panels (work). The work constituted an historical "time line," in relief, of events and social trends in East Bridgewater from its earliest days to the time of the commission. The final panel of the work contained references to social issues in the 1960's and 1970's, including drug use, environmental pollution, nuclear war, and civil unrest. The judge found that the plaintiff had invested substantial time and emotional resources in the work, and that it was "an expression of [the plaintiff's] personality." The judge also accepted the testimony of two experts that the wall with the affixed mural "was a work of fine art of recognized quality."[3] Because of the method of its construction, the work cannot be moved intact from its present site.

In October, 1989, the property on which the work is located was acquired by the Grace Bible Church Fellowship, Inc., for use as a house of worship for members of the church. The property was dilapidated when the church acquired it. On October 21, 1989, shortly after the purchase was complete, approximately sixty members of the church joined in a "clean-up day." The church intended to remove the work in its entirety, and, at some point during the clean-up day, a

statute require a party, who draws into question the constitutionality of a law in an action to which the Commonwealth or an officer thereof is not a party, to "notify the attorney general within sufficient time to afford him an opportunity to intervene." We ordered the case referred to the Attorney General for his consideration for possible intervention. The Attorney General chose not to intervene, but, after obtaining extensions of time to consider the merits of the case, filed an amicus brief on April 29, 1996.

[3]General Laws c. 231, § 85S (1994 ed.) (Act), protects "works of fine art," which are defined, in subsection (b), as "any original work of visual or graphic art of any media which shall include, but not limited to [sic], any painting, print, drawing, sculpture, craft object, photograph, audio or video tape, film, hologram, or any combination thereof, of recognized quality." In determining whether a work is one of "fine art" within the meaning of the Act, a judge is directed to rely "on the opinions of artist [sic], art dealers, collectors of fine art, curators of art museums, restorers and conservators of fine art and other persons involved with the creation or marketing of fine art." G. L. c. 231, § 85S (f).

substantial portion of the east end of the wall, constituting about one-seventh of the entire work, was demolished. The judge accepted as credible testimony by the pastor of the church that the work was objectionable to the church on religious grounds, and that it was for this reason that the church had decided to remove it.

The plaintiff was informed of the partial destruction of his work by the chairwoman of the East Bridgewater historical commission. On the basis of the Act, he obtained a preliminary injunction prohibiting the church from causing or permitting any further physical defacement or alteration of the work.[4] On appeal, the plaintiff argues that the judge erred in concluding that the Act, as applied, would violate the defendants' rights under art. 2. We need not reach this constitutional issue, however, because we agree with the defendants' contention that the Act was not intended to apply retrospectively to works created before its enactment and owned by someone other than the artist.[5]

1. Because the plaintiff sought relief under the Act, which we have not previously had occasion to consider, we begin by discussing the Act's content and its relation to existing law. According to a commentator, the Act follows similar legislation in the States of California and New York "in attempting to graft onto a generally inhospitable common law tradition the civil law concept of *droit moral,* whereby a creative artist retains certain inalienable rights with respect to his or her creation before and after publication, display or sale" (footnote omitted). Koven, Observations on the Massachusetts Art Preservation Act, 71 Mass. L. Rev. 101, 101 (1986). The primary goal of the Act is to safeguard the professional reputations of Massachusetts artists by protecting the work which forms the basis of the artists' reputations. See G. L. c. 231,

[4]Subsection (*c*) of the Act provides, in part, that "[n]o person, except an artist who owns or possesses a work of fine art which the artist has created, shall intentionally commit, or authorize the intentional commission of any physical defacement, mutilation, alteration, or destruction of a work of fine art."

[5]The plaintiff's claims are based on conduct by the defendants (the deliberate destruction of part of the work) that occurred after the effective date of the Act. The parties have discussed the question of the application of the Act's provisions to a work created prior to its enactment as one of retrospectivity, and it is in this sense that we use the term in this opinion.

§ 85S (a).[6] To this end, the Act protects what has been referred to as the "Right of Integrity," Koven, *supra* at 103, by prohibiting the physical defacement or alteration of a work of fine art, see note 4, *supra*, for the lifetime of the artist and for fifty years thereafter. G. L. c. 231, § 85S (g).[7] The Act also protects what has been referred to as the "Right of Paternity," see Koven, *supra*, that is, the right of the artist to claim authorship of his work, or "for just and valid reason, to disclaim authorship of his work of fine art."[8] G. L. c. 231, § 85S (d). The rights of integrity and paternity are enforceable by the artist, or his duly authorized representative, by an action in the Superior Court. G. L. c. 231, § 85S (e). The Act deals separately with "fine art [that] cannot be removed from a building without substantial physical defacement, mutilation, alteration, or destruction of such work." G. L. c. 231, § 85S (h). As to these works, the rights and duties created under the Act are forfeited, "unless expressly reserved by an instrument in writing signed by the owner of such building and properly recorded prior to the installation of such art." *Id*. The Act creates new rights for artists with respect to their

---

[6]The preamble of the Act, subsection (a), provides as follows:

> "The general court hereby finds and declares that the physical alteration or destruction of fine art, which is an expression of the artist's personality, is detrimental to the artist's reputation, and artists therefore have an interest in protecting their works of fine art against such alteration or destruction; and that there is also a public interest in preserving the integrity of cultural and artistic creations."

[7]Because its provisions only apply for fifty years after an artist's death, much of what the general public would consider "fine art" clearly is not protected by the Act. Thus, it is somewhat misleading to refer to this legislation as an "Art Preservation Act." As has been previously noted, the legislation serves primarily to safeguard artists' professional reputations by preserving the integrity of the creative work which forms the basis for those reputations. The Act's preservation function is subsidiary to this main purpose.

[8]Cognate Federal legislation, the Federal Visual Artists Rights Act of 1990, explicitly sets forth the circumstances in which an artist or his or her representative is entitled to disclaim authorship of a visual work of fine art. An artist has the right "to prevent the use of his or her name as the author of the work of visual art in the event of a distortion, mutilation, or other modification of the work which would be prejudicial to his or her honor or reputation." 17 U.S.C. § 106A (a)(2) (1994).

work after it has left their hands, and it creates new duties for owners of fine art, who may not alter, destroy, or grossly neglect a work of fine art in their possession that is subject to the provisions of the Act. G. L. c. 231, § 85S (*c*).

2. The defendants contend that, in the absence of a legislative directive mandating retrospective application, the Act, which alters the relationship and expectations of artists and owners of art, should not be applied retrospectively to an owner of a work of fine art that was created and permanently left the artist's possession before the effective date of the Act. We agree with the defendants that the text of the Act and its legislative history compel the conclusion that it does not apply to a piece of fine art, like the work, whose creation preceded the enactment of the protective legislation.

Whether a new law applies retrospectively is a question of legislative intent. "In the absence of an express legislative directive, this court has usually applied '[t]he general rule of interpretation . . . that all statutes are prospective in their operation, unless an intention that they shall be retrospective appears by necessary implication from their words, context or objects when considered in the light of the subject matter, the pre-existing state of the law and the effect upon existent rights, remedies and obligations. Doubtless all legislation commonly looks to the future, not to the past, and has no retroactive effect unless such effect manifestly is required by unequivocal terms. It is only statutes regulating practice, procedure and evidence, in short, those relating to remedies and not affecting substantive rights, that commonly are treated as operating retroactively . . . ." *Fontaine* v. *Ebtec Corp.*, 415 Mass. 309, 318 (1993), quoting *City Council of Waltham* v. *Vinciullo*, 364 Mass. 624, 626 (1974). See *Austin* v. *Boston Univ. Hosp.*, 372 Mass. 654, 657 (1977). See generally 2 Singer, Sutherland Statutory Construction §§ 41.01, 41.04 (5th ed. 1993).

As the judge noted, the Act does not expressly address whether its provisions should apply retrospectively to work created before its enactment. General Laws c. 231, § 85S (*b*), defines "[f]ine art" broadly, as "*any* original work of visual or graphic art of any media," (emphasis supplied), and the legislative purpose, the protection of fine art as an expression of an artist's personality and the basis for his reputation, logically could extend to art created prior to the legislation's enactment.

Nonetheless, the text of the Act poses barriers to its application to works created prior to its enactment. The Act exempts from its protections fine art attached to a building, which cannot be removed without defacement or destruction, unless the rights and duties created by the Act are "expressly reserved by an instrument in writing signed by the owner of such building and properly recorded, prior to the installation of such art." G. L. c. 231, § 85S (*h*). This condition obviously could not be satisfied with respect to a work of art created as an integral part of a building prior to the Act's effective date. Thus, at best, the Act could only apply selectively to some works of fine art created prior to its enactment, and it could not apply to most works of immovable art, which may, in fact, face the greatest risk of defacement or destruction because an owner cannot otherwise dispose of such a work.

In addition to the forward-looking nature of the reservation provision in § 85S (*h*), there are other compelling reasons to conclude that the Legislature's failure to provide for retrospective application of the Act represents a deliberate choice that should be respected by this court. A comparison of the texts indicates that the Act was modeled on the so-called California Art Preservation Act, Cal. Civ. Code § 987, enacted in 1979 (West 1982 & Supp. 1996) (California Act). See Koven, *supra* at 104. In most respects, the Act follows quite precisely the language of the California Act.[9] There is, however, one omission from, and one addition to, the Act, both bearing directly on the question of retrospective application. Where the California Act (§ 987 [j]) provides that it shall "apply to claims based on proscribed acts occurring on or after [the effective date of the Act] to works of fine art *whenever created*," (emphasis supplied), the Act is silent on this point. In addition, as noted above, the Act will not protect a work of fine art which is attached to a building and cannot be removed unless a preservation restriction applicable to the work has been recorded prior to the work's creation.

[9]There are differences between the Act and the California Art Preservation Act, Cal. Civ. Code § 987 (West 1982 & Supp. 1996), in addition to those discussed in the body of this opinion. Most significantly, the definition of "[f]ine art" in the Act is considerably more inclusive, extending to audiotapes, videotapes, and films, none of which is protected by the California Act. Compare G. L. c. 231, § 85S (*b*), with Cal. Civ. Code § 987 (b) (2).

The California Act also requires the recordation of a preservation restriction for works of fine art attached to a building, but does not require that the restriction be recorded before such a work is created and installed.

The legislative history of the Act strongly suggests that the changes just described were deliberate and, consequently, supports the view that the Legislature did not intend the Act to apply retrospectively to works created before its enactment. Prior to its enactment, a different version of the Act had been proposed. 1984 House Doc. No. 2576. That version included the language, found in the California Act, which would have made the Act applicable to "works of fine art whenever created." *Id.* at 4. In addition, the proposed legislation did not require that an appropriate preservation restriction on a work of fine art attached to a building be recorded prior to creation of the work. *Id.* at 3. These two provisions were eliminated from the Act before it became law. While there are other differences of import between the proposed and the final versions of the legislation,[10] these two changes demonstrate that the revisions made prior to passage included a purposeful determination to limit the applicability of the Act to works of fine art created after its enactment. See *Green v. Wyman-Gordon Co.*, 422 Mass. 551, 556 (1996) (deletions prior to enactment normally assumed to be intentional). See also *Russello* v. *United States*, 464 U.S. 16, 23-24 (1983); *Clarke* v. *Kentucky Fried Chicken of Cal., Inc.*, 57 F.3d 21, 26 (1st Cir. 1995); *Rhode Island* v. *Narragansett Indian Tribe*, 19 F.3d 685, 700 (1st Cir.), cert. denied, 513 U.S. 919 (1994); 2A Singer, Sutherland Statutory Construction § 48.04, at 325 (5th ed. 1992).

Statutes in other jurisdictions, comparable to the Act in that they protect works of art from destruction, mutilation, or alteration, all address specifically whether their provisions apply to works of fine art created prior to enactment. See Visual Artists Rights Act of 1990, 17 U.S.C. § 106A (d)(1) & (2) (1994); Cal. Civ. Code § 987 (j); Conn. Gen. Stat. Ann. § 42-116t (g) (1995); Fine Arts Preservation Act, Pa. Stat.

---

[10]Most notably, the proposed legislation had provided for the availability of punitive damages, which the enacted legislation does not, and the enacted legislation includes a provision which permits the Attorney General to assert the rights under the Act of a deceased artist with respect to a work of fine art that is in public view.

Ann. tit. 73, § 2110 (b) (1993). It is worth noting that the Legislatures responsible for these various laws have chosen differently on this point. The Federal Act applies to works created on or after the effective date of the statute and to works created prior to the statute's effective date "but title to which has not, as of such effective date, been transferred from the author." Connecticut's Act, enacted in 1988, applies only to works created on or after October 1, 1988. In contrast, as has been previously noted, the California Act applies to works of fine art whenever created, as does the Pennsylvania Act (although the Pennsylvania Act has the additional limitation that it applies only to works of fine art displayed in a place accessible to the public). We may infer from these diverging approaches that our Legislature is not alone in having concluded that the rights and duties created by legislation like the Act sufficiently alter the expectations and responsibilities of owners or possessors of fine art, that these duties should not be imposed on a person who acquired a work of fine art that was created before such duties were imposed by law. The Legislature also may have considered the obvious point that the author of a work created before the Act's effective date could not have acted in reliance on the rights created by the legislation. It is for the Legislature to pronounce the scope of the changes in rights and duties that it intends to effect by a new law. We agree with the defendants that the Legislature did not intend the Act to apply to preexisting works of fine art.

3. We also affirm the judgment on the plaintiff's claims of intentional and negligent infliction of emotional distress. While we do not doubt that the partial destruction of the work caused serious distress to the plaintiff, as matter of law, the defendants' conduct cannot be considered extreme and outrageous. An owner in fee of real property, such as the church, generally has the right to renovate or remove structures or objects on the property, and the exercise of that right, at least in the circumstances of this case, cannot be classified as extreme and outrageous behavior. See *Sena* v. *Commonwealth*, 417 Mass. 250, 263-264 (1994); *Conway* v. *Smerling*, 37 Mass. App. Ct. 1, 8-9 (1994). As to the claim of negligent infliction of emotional distress, as finder of fact, faced with testimony about fairly amorphous symptoms of physical harm, the judge was entitled to conclude that the

plaintiff had not satisfied his burden of proof, by a preponderance of the evidence, on this point. See generally *Sullivan* v. *Boston Gas Co.*, 414 Mass. 129 (1993).

4. The judgment is modified to add to it a provision declaring that the plaintiff's work of art is not subject to the protections contained in G. L. c. 231, § 85S, and, as so modified, the judgment is affirmed.

*So ordered.*