FLEET NATIONAL BANK *vs.* COMMISSIONER OF REVENUE.
E. HAFFNER FOURNIER & another,[1] executors,[2] *vs.*
COMMISSIONER OF REVENUE.

Suffolk. Essex. January 3, 2007. - March 2, 2007.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Taxation,* Estate tax, Abatement. *Interest. Statute,* Construction, Retrospective statute.

In the absence of any explicit pronouncement from the Legislature to the contrary, this court declined to give retroactive effect to a statutory amendment (St. 2003, c. 26, § 197) that extinguished an existing substantive right under G. L. c. 62C, § 40 (namely, the right of a taxpayer to be repaid a refund, with interest thereon, for the overpayment of taxes from the time of such overpayment, rather than from the date of the filing of an abatement application, which could occur substantially later than the overpayment); thus, certain taxpayers who had overpaid their taxes prior to the effective date of the amendment were entitled to interest on their refunds from the time of their respective overpayments until the amendment's effective date, at the rate set forth in G. L. c. 62C, § 32 (*a*), and after the effective date, the taxpayers were entitled to interest on their refunds beginning from the date of the filing of their respective abatement applications at the lower applicable interest rate set forth in G. L. c. 62C, § 40 (*a*), as amended through St. 2003, c. 26, § 196. [447-451]

APPEAL from a decision of the Appellate Tax Board.

The Supreme Judicial Court granted an application for direct appellate review.

PETITION filed in the Essex Division of the Probate and Family Court Department on December 30, 2004.

Motions for judgment on the pleadings were heard by *John P. Cronin,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*David Hadas,* Assistant Attorney General (*Thomas A. Barnico,*

---

[1]Joanne D. Fournier.

[2]Of the estate of Emile L. Fournier.

Assistant Attorney General, with him) for Commissioner of Revenue.

*John S. Brown (Matthew D. Schnall & Donald-Bruce Abrams* with him) for Fleet National Bank.

*Jonathan Sablone (Stephen M. LaRose* with him) for E. Haffner Fournier & another.

SPINA, J. In these appeals by the Commissioner of Revenue (commissioner) and now before us on his applications for direct appellate review, we consider how interest on tax refunds owed to the estate of Emile L. Fournier (Fournier estate) and to Fleet National Bank (Fleet)[3] (collectively, the taxpayers) is properly calculated under G. L. c. 62C, § 40, as amended through St. 2003, c. 26, § 197.

1. *Statutory framework.* General Laws c. 62C, § 40, governs the refund of taxes, interest, or penalties when a taxpayer makes an overpayment to the Department of Revenue (department). Because the present dispute turns on our construction of § 40, we first set forth its relevant provisions.

Prior to July 1, 2003, G. L. c. 62C, § 40, stated:

> "(*a*) If any refund of any tax, interest or penalties is made pursuant to [G. L. c. 62C, § 36], the state treasurer shall repay to the taxpayer the amount of such refund with interest thereon at the rate established under [G. L. c. 62C, § 32], except as hereinafter provided, *from the date of overpayment* to a date, to be determined by the commissioner, preceding the date of the refund check by not more than thirty days . . ." (emphasis added).

Pursuant to the department's regulations, an overpayment of taxes occurred on "the due date of the applicable return without regard to extensions, or date of receipt of the overpayment, or the date of filing of the return, whichever [was] later, to a date no more than 30 days before the issuance of the refund." 830 Code Mass. Regs. § 62C.33.1(7)(b) (2004). See Technical Information Release (TIR) 03-18 (Aug. 29, 2003), 5 Official MassTax Guide at 170 (West 2006). Interest on a refund of

---

[3]Bank of America, N.A., is the successor by merger to Fleet National Bank. We refer throughout this opinion to Fleet because it was the entity that filed the application for an abatement with the Department of Revenue.

an overpayment was paid "at the rate of the Federal short-term rate determined under section 6621(b) of the Internal Revenue Code, as amended and in effect for the taxable year, plus four percentage points, compounded daily." G. L. c. 62C, § 32 (*a*). See 830 Code Mass. Regs. § 62C.33.1(7)(a).

In 2003, the Massachusetts Legislature enacted emergency legislation to make immediate appropriations for the fiscal year beginning July 1, 2003. See St. 2003, c. 26, preamble. As is pertinent here, the Legislature amended G. L. c. 62C, § 40, to add a second paragraph to subsection (*a*) (hereinafter referred to as the 2003 amendment), which provides:

> "For purposes of this section, the term 'date of overpayment' shall mean the later of the date when the commissioner shall have received a properly completed return and full payment of the tax due thereon, or *the date when the commissioner shall have received a completed and substantiated written application for abatement* filed in accordance with this chapter, and any supplemental information requested by the department from the taxpayer in support of such application" (emphasis added).

G. L. c. 62C, § 40 (*a*), as amended through St. 2003, c. 26, § 197. See 830 Code Mass. Regs. § 62C.33.1(7)(c) ("For abatement claims filed on or after July 1, 2003, interest will be calculated on any tax, interest or penalty refunded from the date of receipt of a completed and fully substantiated abatement application"). See also TIR 03-18, *supra*. The 2003 amendment became effective on July 1, 2003. See St. 2003, c. 26, § 715. Interest on a refund of an overpayment was reduced to the Federal short-term rate, "plus 2 percentage points, computed as simple interest." G. L. c. 62C, § 40 (*a*), as amended through St. 2003, c. 26, § 196. See 830 Code Mass. Regs. § 62C.33.1 (7)(a). In sum, the effect of the 2003 amendment to G. L. c. 62C, § 40 (*a*), with respect to the issuance of a tax refund for an overpayment was to change both the meaning of the "date of overpayment" and the applicable interest rate.

2. *Factual and procedural background.* a. *Fournier estate.* Emile L. Fournier, a Massachusetts resident, died on January 24, 2000. On October 24, 2000, the executors of the Fournier estate requested and received an extension on the filing of its

Massachusetts estate tax return, and they paid the Commonwealth estimated estate taxes in the amount of $4,383,500. On April 24, 2001, the executors of the Fournier estate filed its Massachusetts estate tax return, which showed actual estate tax liability of $4,018,177.72, and a refund due to the estate of $365,322.28. The Commonwealth paid this refund. The Internal Revenue Service (IRS) then performed an audit on the Fournier estate and issued a report of estate tax examination changes, setting forth line item adjustments to the Fournier estate's Federal estate tax return.[4] As a consequence of these adjustments, the gross value of the Fournier estate decreased, and its Massachusetts tax liability was reduced from $4,018,177.22 to $1,678,795.20, resulting in an overpayment in Massachusetts taxes of $2,339,382.52.[5]

On June 25, 2004, the executors of the Fournier estate filed an abatement application with the department, seeking a refund of its $2,339,382.52 overpayment, plus statutory interest pursuant to G. L. c. 62C, § 40. The department issued a refund to the Fournier estate in the amount of $2,364,629.96, of which $2,339,382.52 was principal and $25,247.44 was interest. The interest was calculated from June 25, 2004, the date the execu-

---

[4]The Federal estate tax return for the Fournier estate has not been included in the record, and it is unclear precisely when it was filed.

[5]At all times relevant to the present action, Massachusetts estate tax liability depended on the Federal government's determination of the value of a particular estate. See G. L. c. 65C, § 2A (*e*), inserted by St. 1992, c. 33, § 419 (Massachusetts estate tax values "shall be as finally determined for [F]ederal estate tax purposes"). As applicable to the estates of Massachusetts residents dying on or after January 1, 1997, this estate tax was known as a "sponge tax." The term would, at first blush, appear to be a misnomer because it was not a tax on sponges. See *Ward* v. *Commissioner of Corps. & Taxation,* 369 Mass. 3, 4 (1975) (commenting on origin of term by noting that "[s]uch a State estate tax has been characterized as a 'sponge' tax because it is designed to divert death taxes to the State which otherwise would go to the Federal government"). The sponge tax was imposed "on estates of decedents valued over the Federal exemption in the year of death. Under the sponge tax system, if any Federal estate tax was due, the Federal government directed a percentage of the Federal estate tax dollars to Massachusetts. If no Federal estate tax was due, then no Massachusetts estate tax was due." *Grassian* v. *Grassian,* 445 Mass. 1012, 1013 (2005). For a discussion of the details of this sponge tax, see A.C. Bailey & W.G. Van Dorn, Taxation § 9:1 (4th ed. 2000 & 2006 Supp.). The sponge tax system was eliminated in Massachusetts as of January 1, 2003. See G. L. c. 65C, § 2A, as appearing in St. 2002, c. 364, §§ 10, 23, 24, and St. 2002, c. 186, §§ 28, 34. See also *Grassian* v. *Grassian, supra.*

tors filed the abatement application, rather than from October 24, 2000, the date they paid the estate taxes.

The executors of the Fournier estate proceeded to file with the Essex Division of the Probate and Family Court Department, pursuant to G. L. c. 62C, § 39, a petition to receive interest owed to the estate. They claimed that the statutory language of G. L. c. 62C, § 40, in effect on October 24, 2000, when the Fournier estate overpaid its estate taxes to the Commonwealth, was controlling, and that the estate was entitled to recoup a total of $663,366.51 in interest that had accrued since that date, rather than the mere $25,247.44 they had been paid. The executors then filed a motion for judgment on the pleadings. The commissioner filed a cross motion for judgment on the pleadings, asserting that the amended statutory language of G. L. c. 62C, § 40, effective July 1, 2003, was controlling, and that the Fournier estate only was entitled to interest from the date it filed its application for an abatement, namely June 25, 2004.

A judge in the Probate and Family Court ruled in favor of the Fournier estate and ordered the commissioner to pay the executors interest in the amount of $638,119.07, plus any additional interest that had accrued between the time of the filing of their petition and final payment. The judge concluded that the commissioner had erred in retroactively applying the 2003 amendment to the Fournier estate because the commissioner's action infringed on the estate's substantive right to the receipt of interest from the date of its tax overpayment. Moreover, the judge opined that the retroactive application of the 2003 amendment did not satisfy the test of "reasonableness," thereby violating due process protections afforded by the Massachusetts Declaration of Rights and the United States Constitution.[6] Accordingly, the Fournier estate was entitled to judgment on the pleadings.[7] The commissioner filed a notice of appeal.

---

[6] "In evaluating the reasonableness of a retroactive statute, we have weighed three principle considerations: the nature of the public interest which motivated the Legislature to enact the retroactive statute; the nature of the rights affected retroactively; and the extent or scope of the statutory effect or impact." *Leibovich* v. *Antonellis*, 410 Mass. 568, 577 (1991).

[7] In his decision, the judge noted that TIR 03-18, issued by the commissioner on August 29, 2003, clarified the practical effect of the 2003 amendment to G. L. c. 62C, § 40. See TIR 03-18, 5 Official MassTax Guide at 166-

b. *Fleet.* On September 3, 1998, BayBank, N.A., the predecessor in interest of Fleet, filed a Massachusetts financial institution excise return for the 1997 calendar year.[8] On October 2, 2003, Fleet obtained a final determination from the IRS reducing its Federal taxable income for the 1997 calendar year. On December 31, 2003, Fleet filed an abatement application with the department, seeking a reduction in its excise tax liability because of the reduction in its 1997 taxable income. It requested an abatement of $709,950 for its overpayment, plus statutory interest pursuant to G. L. c. 62C, § 40. The commissioner allowed the abatement, and the department issued a refund to Fleet in the amount of $712,452.60, of which $709,950 was principal and $2,502.60 was interest. The interest was calculated from December 31, 2003, the date Fleet filed its abatement application, rather than from September 3, 1998, the date it paid its excise tax. Fleet then requested that the commissioner supplement the refund with an additional payment of interest. The commissioner denied Fleet's request.

On April 5, 2004, Fleet filed with the Appellate Tax Board (board) a petition pursuant to the formal procedure, see G. L. c. 58A, § 7, and G. L. c. 62C, § 39, challenging the commissioner's refusal to pay additional interest on Fleet's successful tax abatement. Fleet and the commissioner agreed that Fleet was entitled to interest on its overpayment from December 31,

170 (West 2006). Therein, the commissioner explained that "[w]here a taxpayer's abatement application is granted, interest will be calculated from the date of receipt of a fully substantiated abatement application," but that "[c]alculation of interest on refunds of overpayments of tax in other situations, such as an audit change reducing an assessment, is not affected by this statutory change [to G. L. c. 62C, § 40]." *Id.* at 170. Relying on *Commissioner of Revenue* v. *BayBank Middlesex,* 421 Mass. 736, 739-740 (1996), the judge concluded that TIR 03-18 was binding on the commissioner because there was no direct contradiction between the language of the statute and the commissioner's interpretation of that language. Therefore, the judge opined that the Fournier estate was exempt from application of the 2003 amendment because an IRS audit had reduced its tax liability. Because we decide this case on the basis of statutory interpretation, we need not consider the import of TIR 03-18.

[8]Fleet acknowledges in its brief that there is no evidence in the record of exactly when BayBank, N.A., paid its financial institution excise tax for the 1997 calendar year. The findings of fact by the Appellate Tax Board indicate that BayBank paid this tax at the same time it filed its return, on September 3, 1998.

2003, the date it filed its abatement application, through February 19, 2004, the date the department issued the refund. However, Fleet asserted that it also was entitled to interest from September 3, 1998, the date it filed its excise return for the 1997 calendar year and paid its required tax, through July 1, 2003, the date the 2003 amendment to G. L. c. 62C, § 40, became effective. Fleet then filed a motion for judgment on the pleadings.

The board ruled in favor of Fleet and ordered the commissioner to pay Fleet interest in the amount of $352,745.11, plus any additional interest that had accrued. The board first noted that the 2003 amendment to G. L. c. 62C, § 40, was silent on how it affected the computation of interest on tax payments made prior to its effective date of July 1, 2003. The board concluded that because the 2003 amendment affected Fleet's substantive right to the interest that had accrued from the date of its overpayment on September 3, 1998, the 2003 amendment had to be applied prospectively, beginning on July 1, 2003. In the alternative, the board stated that, even if the 2003 amendment to G. L. c. 62C, § 40, was deemed to be a procedural change, rather than a substantive one, the 2003 amendment could not be applied retroactively where the procedural stage to which it related, namely the daily accrual of interest from the date of overpayment, had already passed. The board further concluded that the commissioner's reliance on 830 Code Mass. Regs. § 62C.33.1(7)(c) was unavailing because the regulation was inconsistent with Massachusetts case law, which prohibits retroactive application of a statutory amendment affecting substantive rights. Accordingly, Fleet was entitled to judgment on the pleadings. The commissioner filed a notice of appeal.

3. *Statutory retroactivity.* We now consider how interest on the refunds paid to the taxpayers should have been calculated in light of the 2003 amendment to G. L. c. 62C, § 40. The thrust of the commissioner's argument is that, contrary to the conclusions of the Probate and Family Court judge and the board, his interest calculations were not based on an unlawful retroactive application of the 2003 amendment. He points out that when the 2003 amendment became effective on July 1, 2003, the only action that had been taken by the taxpayers was the payment of

their respective taxes. In the commissioner's view, such payments did not confer on the taxpayers any right to the recovery of interest. Rather, the commissioner continues, the right to interest only accrued on the allowance of a refund by the taxing authority. The commissioner asserts that, as of July 1, 2003, the taxpayers had not yet been afforded refunds on their overpayments and, therefore, in accordance with the 2003 amendment, they only were entitled to interest from the dates that they filed their completed applications for an abatement. We disagree with the commissioner's interpretation of G. L. c. 62C, § 40, and the effect of the 2003 amendment.

A fundamental and well-established principle of statutory interpretation "is that a statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated." *Hanlon* v. *Rollins*, 286 Mass. 444, 447 (1934). See *Sullivan* v. *Brookline*, 435 Mass. 353, 360 (2001). Courts must ascertain the intent of a statute from all its parts and from the subject matter to which it relates, and must interpret the statute so as to render the legislation effective, consonant with sound reason and common sense. See *Champigny* v. *Commonwealth*, 422 Mass. 249, 251 (1996); *Pentucket Manor Chronic Hosp., Inc.* v. *Rate Setting Comm'n*, 394 Mass. 233, 240 (1985); *Tilton* v. *Haverhill*, 311 Mass. 572, 577-578 (1942). Where the language of a statute is unambiguous, we simply give effect to the Legislature's intent. See *Smith* v. *Commissioner of Transitional Assistance*, 431 Mass. 638, 646-647 (2000).

Whether a statutory enactment applies prospectively or retrospectively is a question of legislative intent. See *Moakley* v. *Eastwick*, 423 Mass. 52, 57 (1996). As a general matter, "all statutes are prospective in their operation, unless an intention that they shall be retrospective appears by necessary implication from their words, context or objects when considered in the light of the subject matter, the pre-existing state of the law and the effect upon existent rights, remedies and obligations. Doubt-

less all legislation commonly looks to the future, not to the past, and has no retroactive effect unless such effect manifestly is required by unequivocal terms. It is only statutes regulating practice, procedure and evidence, in short, those relating to remedies and not affecting substantive rights, that commonly are treated as operating retroactively, and as applying to pending actions or causes of action." *Hanscom* v. *Malden & Melrose Gas Light Co.*, 220 Mass. 1, 3 (1914). See *Sentry Fed. Sav. Bank* v. *Co-operative Cent. Bank*, 406 Mass. 412, 414 (1990) ("Unless the legislative intent is unequivocally clear to the contrary, a statute operates prospectively, not retroactively"); *Canton* v. *Bruno*, 361 Mass. 598, 606 (1972) ("If it appears by necessary implication from the words, context or objects of a particular enactment that the Legislature intended it to be retroactive in operation, this court will give effect to the intent of the Legislature in so far as the State and Federal Constitutions permit"). See also 2 N.J. Singer, Sutherland Statutory Construction § 41.04 (6th ed. 2000). "Judicial skepticism about [the] retrospective effect of statutes is founded on recognition of the unfairness inherent in altering previously acquired rights . . . ." *Goes* v. *Feldman*, 8 Mass. App. Ct. 84, 88 (1979). To the extent that there may be uncertainty about the application of new legislation, it must be resolved against retroactivity. See *Austin* v. *Boston Univ. Hosp.*, 372 Mass. 654, 658 (1977).

While this rule about the retroactive application of a statute is easily enunciated, the distinction between legislation concerning "substantive rights," and legislation concerning "only procedures and remedies" is more difficult to draw. *City Council of Waltham* v. *Vinciullo*, 364 Mass. 624, 626-627 (1974). "It appears from the context, and from a review of our prior decisions, that the term 'remedies,' as it was used in *Hanscom* v. *Malden & Melrose Gas Light Co.*, *supra*, has only encompassed essentially procedural legislation which preserves a remedy that might otherwise be lost, or which creates a new enforcement mechanism for remedying the impairment of an existing legal right." *Fontaine* v. *Ebtec Corp.*, 415 Mass. 309, 319 (1993). See *Child Support Enforcement Div. of Alaska* v. *Brenckle*, 424 Mass. 214, 220 (1997) (stating that remedial statute, one not affecting substantive rights, should be applied retroactively); *Gray*

v. *Commissioner of Revenue*, 422 Mass. 666, 670 (1996) (differentiating retroactive application of statute regulating practice and procedure from prospective application of statute to preserve substantive rights); *Hein-Werner Corp.* v. *Jackson Indus., Inc.*, 364 Mass. 523, 525 (1974). The 2003 amendment to G. L. c. 62C, § 40, did neither. Instead, it extinguished an existing substantive right, namely the right of a taxpayer to be repaid a refund, with interest thereon, for the overpayment of taxes from the time of such overpayment, rather than from the date of the filing of an abatement application, which could occur substantially later than the overpayment.

A statutory amendment that extinguishes a substantive right only operates prospectively, absent an explicit pronouncement from the Legislature to the contrary. See *Austin* v. *Boston Univ. Hosp.*, *supra* at 657. Here, the Legislature made no such pronouncement to indicate that the 2003 amendment to G. L. c. 62C, § 40, was to have retroactive effect. The 2003 amendment does not state, for example, that its provisions govern any tax action that is "pending or was previously adjudicated." *Child Support Enforcement Div. of Alaska* v. *Brenckle*, *supra* at 219 (concluding that express intention of Legislature was to apply Uniform Interstate Family Support Act retroactively). See *Leibovich* v. *Antonellis*, 410 Mass. 568, 576 (1991). Accordingly, we treat the 2003 amendment as operating prospectively. To do otherwise would impair the substantial right of all taxpayers who, prior to July 1, 2003, overpaid their taxes so as not to incur penalties for underpayment, see G. L. c. 62C, §§ 32 (*a*) and 33 (*b*), to receive a refund, with interest thereon, from the date such overpayment was made, in accordance with the clear language of G. L. c. 62C, § 40. Contrary to the commissioner's argument, prior to the enactment of the 2003 amendment, the payment of taxes *was* the operative statute-triggering event that immediately conferred on a taxpayer the right to receive a refund and interest if it was determined, at some subsequent time, that the taxpayer made an overpayment. When the taxpayers here paid their respective estate and excise taxes, G. L. c. 62C, § 40, plainly provided that the State treasurer would repay the amount of the refund, with interest thereon, from the date of overpayment.

Fleet National Bank *v.* Commissioner of Revenue.

We conclude that the language of G. L. c. 62C, § 40, is not ambiguous and does not convey a legislative intent to apply the 2003 amendment retroactively. Therefore, because the taxpayers overpaid their taxes prior to the effective date of the 2003 amendment, they were entitled to interest on their refunds from the time of their respective overpayments until July 1, 2003, at the rate set forth in G. L. c. 62C, § 32 (*a*). Then, as of July 1, 2003, the taxpayers only were entitled to interest on their refunds beginning from the date of the filing of their respective abatement applications — for Fleet, December 31, 2003, and for the Fournier estate, June 25, 2004 — at the lower applicable interest rate set forth in G. L.. c. 62C, § 40 (*a*), as amended through St. 2003, c. 26, § 196.[9]

4. *Conclusion.* The judgment of the Probate and Family Court as to the Fournier estate is affirmed, and we remand that case for a recalculation of interest in accordance with this opinion.[10] The decision of the board as to Fleet is affirmed.

*So ordered.*

---

[9]It is well established that "issues of statutory interpretation should be resolved prior to reaching any constitutional issue." *1010 Memorial Drive Tenants Corp.* v. *Fire Chief of Cambridge*, 424 Mass. 661, 663 (1997). "We do not decide constitutional questions unless they must necessarily be reached." *Commonwealth* v. *Paasche*, 391 Mass. 18, 21 (1984). Here, because our conclusions are based on our interpretation and application of G. L. c. 62C, § 40, and the 2003 amendment, it is unnecessary to consider whether the commissioner's construction of these legislative enactments violated due process rights afforded to the taxpayers under the Massachusetts Declaration of Rights or the United States Constitution.

[10]We are unable to discern from the judgment entered in the Probate and Family Court whether the $638,119.07 in interest awarded to the Fournier estate included or excluded interest for the period from July 1, 2003, to June 25, 2004. For the reasons set forth in this opinion, the Fournier estate was not entitled to interest during this time period.