## Town Fair Tire Centers, Inc. *vs.* Commissioner of Revenue.

Suffolk. May 7, 2009. - August 25, 2009.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, CORDY, BOTSFORD, & GANTS, JJ.

*Administrative Law,* Judicial review, Substantial evidence, Agency's interpretation of statute. *Taxation,* Sales and use tax.

Discussion of the standard of review applicable to the Appellate Tax Board's interpretation of a statute. [604-605]

Discussion of the statutory framework governing a vendor's obligation to collect use tax. [605-606]

A vendor who sells "tangible personal property" to a Massachusetts resident is not obligated to collect and remit Massachusetts use tax under G. L. c. 64I, § 4, unless and until the storage, use, or consumption of the property occurs in Massachusetts; thus, G. L. c. 64I, § 4, did not permit the Commissioner of Revenue to assess taxes and related penalties against a Connecticut corporation for its failure to collect use taxes on automobile tires that it sold in New Hampshire to Massachusetts residents, where there was no evidence of actual use of the tires in Massachusetts, apart from the inference that the tires were installed on vehicles registered in Massachusetts. [606-610]

APPEAL from a decision of the Appellate Tax Board.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*David J. Nagle (William E. Halmkin* with him) for the plaintiff.

*David A. Guberman,* Assistant Attorney General, for Commissioner of Revenue.

*Deborah B. Weissbard & Glenn A. Perlow,* for State of New Hampshire, amicus curiae, submitted a brief.

*Kathleen King Parker, Frederick J. Nicely, & Todd A. Lard,* for Council on State Taxation, amicus curiae, submitted a brief.

MARSHALL, C.J. We consider in this appeal whether a vendor who sells "tangible personal property" to a Massachusetts resident is obligated to collect and remit Massachusetts use tax where the customer purchases and takes delivery of the mer-

chandise outside the Commonwealth. Following a sales and use tax audit of Town Fair Tire Centers, Inc. (Town Fair), concluding, among other things, that certain automobile tires had been sold at Town Fair's New Hampshire stores to Massachusetts residents and inferentially were installed on vehicles registered in Massachusetts, the Commissioner of Revenue (commissioner) assessed use tax and related penalties against Town Fair for failing to collect use taxes on those tire sales. See G. L. c. 64I, § 4.[1] Town Fair appealed to the Appellate Tax Board (board), which ruled in favor of the commissioner, finding that the automobile tires at issue were intended for use in the Commonwealth. Town Fair appealed from the board's decision, see G. L. c. 58A, § 13, and we transferred the case here on our own motion. Because we conclude that the applicable Massachusetts statutes do not permit the Commonwealth to assess use taxes against a vendor in circumstances such as these, we reverse.

1. *Background.* We summarize the facts found by the board, except where noted. Town Fair is a Connecticut corporation whose principal business is the retail sale and installation of automobile tires. During the "period at issue" in this matter, October 1, 2000, to April 30, 2003, Town Fair operated sixty stores in New England, including eighteen stores in Massachusetts[2] and three stores in New Hampshire.[3] Town Fair collected and remitted Massachusetts sales tax on tire sales at its

---

[1]General Laws c. 64I, § 4, which we refer to as the use tax, provides in pertinent part: "Every vendor engaged in business in the commonwealth and making sales of tangible personal property or services for storage, use or other consumption in the commonwealth not exempted under this chapter, shall at the time of making the sales, or, if the storage, use or other consumption of the tangible personal property or services is not then taxable hereunder, at the time the storage, use or other consumption becomes taxable, collect the tax from the purchaser and give the purchaser a receipt therefor in the manner and form prescribed by the commissioner. The tax required to be collected by the vendor shall constitute a debt owed by the vendor to the commonwealth. Such vendor shall collect from the purchaser the full amount of the tax imposed by this chapter, or an amount equal as nearly as possible or practicable to the average equivalent thereof; and such tax shall be a debt from the purchaser to the vendor, when so added to the sales price, and shall be recoverable at law in the same manner as other debts."

[2]Town Fair is a registered vendor in Massachusetts. See G. L. c. 62C, § 67, and G. L. c. 64H, § 7.

[3]The operation of each of Town Fair's New Hampshire stores is similar. In a typical transaction, a potential purchaser enters the store and discusses tire

Massachusetts stores, as well as sales tax on tire sales at its stores located in those other States that impose a sales tax.[4] It did not collect Massachusetts use tax in connection with the sale of tires at its stores outside Massachusetts.

In 2003, an auditor with the Department of Revenue (department) commenced a sales and use tax audit of Town Fair for the period at issue. By agreement with Town Fair, the auditor utilized a "block sampling" method, selecting a single month, September, 2002, for review. The auditor's examination of records from, inter alia, Town Fair's three New Hampshire stores for that month identified 313 invoices in which the invoice listed a Massachusetts address beneath the name of the purchaser.[5] Many — but not all — of the invoices listed a Massachusetts telephone number,[6] and certain purchasers who paid by check provided a Massachusetts driver's license.[7] The invoices included the vehicle make and model, but there was *no* information regarding the State of registration, license plate number, or inspection sticker information of the vehicles. There is no evidence that any of the tires sold in the 313 transactions under review were actually stored or used in Massachusetts, the board made no such finding, and the commissioner does not argue otherwise.

Based on the 313 invoices listing a Massachusetts address, the auditor identified the sale in each case as having been made to a Massachusetts resident, and "[c]oncluding" (in the board's words) that those purchasers "*would* use the tires installed on their vehicles in the Commonwealth" (emphasis added), the

options with a Town Fair sales associate. When a purchaser has made a selection, a sales invoice is generated and a Town Fair technician drives the customer's vehicle into a garage bay and installs the tires. A technician then drives the vehicle back to the front of the store. The salesperson delivers the keys of the vehicle and a copy of the sales invoice to the purchaser, who then leaves the store.

[4]New Hampshire does not impose a sales tax.

[5]There was evidence from Town Fair that the individual whose name and address appears on the invoice is not necessarily the owner or operator of the vehicle on which the tires have been installed.

[6]There was evidence from Town Fair that approximately five per cent of the invoices listed a telephone number with an area code not used in Massachusetts.

[7]There was evidence from Town Fair that some of the 313 invoices reflect that a purchaser provided a driver's license from a State other than Massachusetts.

auditor determined that Town Fair should have collected and remitted Massachusetts use tax for the 313 sales.[8] The commissioner subsequently assessed Town Fair approximately $108,947 of uncollected use taxes based on those sales.[9] Town Fair applied for an abatement, which the commissioner denied. Town Fair then appealed to the board, see G. L. c. 58A, § 7, and G. L. c. 62C, § 39, which affirmed the commissioner. The board found, "[b]ased upon the Massachusetts addresses, telephone numbers and driver's license information contained in the record," that the tires sold by Town Fair in the pertinent transactions "were installed on vehicles owned or operated by Massachusetts residents." Based on the same evidence, and "the absence of evidence to the contrary," the board "inferred" that the vehicles "also bore Massachusetts registration plates ('license plates') and certificates of inspection." From this, the board "found" that the sales at issue "were sales of tangible personal property *to be* stored, used or consumed in Massachusetts" (emphasis added), and held that the commissioner "properly assessed" Town Fair for use tax in connection with those sales. We now turn to the merits.[10]

2. *Discussion.* a. *Standard of review.* The decision of the board interpreting a statute "will not be reversed or modified if it is based on a correct application of the law and if it is based on substantial evidence." *Kennametal, Inc.* v. *Commissioner of Revenue*, 426 Mass. 39, 43 (1997), cert. denied, 523 U.S. 1059 (1998). "We review questions of statutory interpretation de novo . . . giving 'substantial deference to a reasonable interpretation

[8]Although the auditor identified and examined 313 invoices with a Massachusetts address, Town Fair represents, and the board does not dispute, that it was assessed use tax based on 283 of the 313 invoices because thirty of the 313 invoices were "credit memos" that showed offsetting refunds. All 313 invoices were entered in evidence.

[9]Sales tax and penalties assessed at the same time by the commissioner for activities of Town Fair unrelated to its sales of tires in New Hampshire are not part of this appeal.

[10]We acknowledge the amicus briefs filed on behalf of Town Fair by the State of New Hampshire and by the Council on State Taxation (COST). The commissioner asserts that COST advances three arguments, not made by Town Fair, that we should not consider. The commissioner's characterization of COST's brief does not pertain to the statutory issues, the basis of this decision.

of a statute by the administrative agency charged with its administration enforcement.' " *Attorney Gen.* v. *Commissioner of Ins.*, 450 Mass. 311, 319 (2008), quoting *Commerce Ins. Co.* v. *Commissioner of Ins.*, 447 Mass. 478, 481 (2006). See *Luchini* v. *Commissioner of Revenue*, 436 Mass. 403, 405 (2002). "[P]rinciples of deference" are not, however, "principles of abdication," *Nuclear Metals, Inc.* v. *Low-Level Radioactive Waste Mgt. Bd.*, 421 Mass. 196, 211 (1995), and an incorrect interpretation of a statute by an administrative agency is entitled to no deference. *Kszepka's Case*, 408 Mass. 843, 847 (1990), and cases cited. The duty of statutory interpretation rests ultimately with the courts. See *Commerce Ins. Co.* v. *Commissioner of Ins.*, *supra*, citing *Cleary* v. *Cardullo's, Inc.*, 347 Mass. 337, 343-344 (1964). In our judgment the board has interpreted the statutes at issue in a manner that cannot be sustained.

b. *Statutory framework.* The use tax and the sales tax "are complementary components of our tax system, created to 'reach all transactions, except those expressly exempted, in which tangible personal property is sold inside or outside the Commonwealth for storage, use, or other consumption within the Commonwealth.' " *Commissioner of Revenue* v. *J.C. Penney Co.*, 431 Mass. 684, 687 (2000), quoting *M & T Charters, Inc.* v. *Commissioner of Revenue*, 404 Mass. 137, 140 (1989). The use tax is governed by the provisions in G. L. c. 64I. Section 2 of that chapter imposed an excise tax, at the rate of five per cent of the sales price,[11] "upon the storage, use or other consumption *in the commonwealth*" of tangible personal property that is "purchased . . . *for storage, use or other consumption within the commonwealth*" (emphasis added).[12] Liability to pay the use tax generally falls on the pur-

[11]On June 29, 2009, the Governor signed into law an appropriations act for fiscal year 2010, increasing the Massachusetts use tax rate to 6.25 per cent, effective August 1, 2009. St. 2009, c. 27, § 57, amending G. L. c. 64I, § 2.

[12]General Laws c. 64I, § 1, defines "storage" to mean "any keeping or retention in the commonwealth for any purpose except sale in the regular course of business or subsequent use solely outside of the commonwealth of tangible personal property purchased from a vendor." The same section provides that " '[u]se' shall mean and include (i) the exercise of any right or power over tangible personal property incident to the ownership of that property, except that it does not include the sale of that property in the regular course of business, and (ii) enjoyment of the benefit of a service, except that it does not include the sale of services in the regular course of business."

chaser who uses the property subject to the tax. G. L. c. 64I, § 3. Purchasers may, however, offset against such liability any tax paid on that property to a vendor under the laws of another State. G. L. c. 64I, § 7 (c).

At issue here is the application of G. L. c. 64I, § 4, which concerns a vendor's obligation to collect use tax where such a tax is imposed under G. L. c. 64I, § 2. See note 1, *supra.* Vendors "engaged in business in the commonwealth"[13] who sell tangible personal property or services "for storage, use or other consumption in the commonwealth" are required to collect the tax from the purchaser and give the purchaser a receipt, unless the "storage, use, or other consumption" is not "taxable" at the time of sale, in which case vendors are required to collect the tax when storage, use, or other consumption "becomes taxable." G. L. c. 64I, § 4. Where a vendor is required to collect use tax and fails to do so, the tax is "owed by the vendor to the commonwealth."[14] *Id.*

c. *Application of G. L. c. 64I.* In upholding the commissioner, the board noted Town Fair's "numerous arguments as to why the transactions at issue did not come within the scope of the statute," but concluded that "those arguments were based on a misinterpretation of the relevant law." Town Fair counters that a vendor's liability for use tax under G. L. c. 64I, § 4, "does not arise in connection with an out-of-State sale merely by virtue of the purchaser's *intending* to store, use or consume merchandise in Massachusetts," as the board held (emphasis added). Rather, a vendor is liable for use tax under G. L. c. 64I, § 4, only if the tires "were actually stored, used or consumed in Massachusetts." We agree. It is axiomatic that a use tax must

---

[13]It is not disputed that Town Fair was at all relevant times "engaged in business in the commonwealth" by virtue of its operation in eighteen stores in Massachusetts. The term "engaged in business in the commonwealth" is defined by G. L. c. 64H, § 1, which G. L. c. 64I, § 1, incorporates by reference, as including "having a business location in the commonwealth."

[14]Although G. L. c. 64I, § 4, describes this obligation as a "debt," where the debt is a use tax shifted to a third party (vendor), the debt is, for all intents, the imposition of tax liability. "It is a settled principle of our taxation jurisprudence that tax statutes are 'to be construed as imposing taxes with respect to matters of substance and not with respect to mere matters of form.' " *Commissioner of Revenue* v. *Gillette Co., ante* 72, 77 (2009), quoting *Commissioner of Revenue* v. *J.C. Penney Co.,* 431 Mass. 684, 688 (2000).

be paid by a purchaser (or collected by a vendor) only if a tax is due. See G. L. c. 64I, § 2 (defining when use tax is imposed). Thus, G. L. c. 64I, § 4, imposes no obligation on a vendor to collect use tax unless and until the "storage, use or consumption of tangible personal property" occurs in Massachusetts, either at the time of sale or at some later point. See *Commissioner of Revenue* v. *J.C. Penney Co.*, supra at 684, 687 (obligation on vendor to collect use tax arises when exercise of right or power incident to ownership of tangible personal property, such as control, occurs in Massachusetts). See also LR 82-104 (Oct. 21, 1982), 1 Official MassTax Guide PWS-673 (West 2007) ("a vendor's use tax liability arises when the property sold by him is *first* stored, used, or otherwise consumed in Massachusetts [ordinarily when the property is delivered in Massachusetts]" [emphasis added]); Advanced Sales and Use Tax in Massachusetts 16 (Lorman Educ. Servs. 2005) ("the acts constituting the exercise of a right or power over property *must* occur in Massachusetts" [emphasis added]). There is no evidence that the tires sold by Town Fair were actually stored, used, or consumed in Massachusetts,[15] and the board did not make such a finding. Because the statute is unambiguous, we "follow the ordinary meaning of the words." *Kszepka's Case*, 408 Mass. 843, 846 (1990).

The board acknowledged that there was no evidence of actual use of the tires within the Commonwealth. In order to bring the tire sales within the scope of the use tax statutes, the board first "found" that the sales were to Massachusetts residents because of the Massachusetts residence and telephone information listed on the invoices. It then viewed the evidence "against the backdrop of motor vehicle registration and operation requirements of the Commonwealth," and "inferred" that the tires were installed on vehicles that "bore Massachusetts license plates and inspection stickers."[16] From this the board reasoned that evidence of actual use or storage in Massachusetts is not required because, in the

---

[15]It is not disputed that Town Fair's interaction with its customers was confined to New Hampshire, and that Town Fair did not itself deliver any of the tires into Massachusetts. See note 3, *supra*.

[16]As noted earlier, there was no evidence that the tires were in fact installed on vehicles with Massachusetts registration plates and inspection stickers.

board's words, "the liability for the [use] tax arises at the time of the purchase *if the purchaser's intent* is to use the property in the Commonwealth" and "the use tax is properly imposed if the purchaser *intended to use* the tires in the Commonwealth at the time of purchase" (emphasis added). The board's conclusion is untenable. It is not supported by the language of the statute. Use in the Commonwealth is a necessary prerequisite. See *Commissioner of Revenue* v. *J.C. Penney Co.*, *supra* at 688 (statute requires that actual use, storage, or consumption "must occur in Massachusetts in order for a taxable 'use' to occur").[17]

For her part, the commissioner acknowledges that "intent" to use the goods in Massachusetts is not sufficient to trigger the use tax.[18] In her view, "compelling circumstantial evidence" that the tires were sold to Massachusetts residents and installed on vehicles registered in Massachusetts leads, in her words, "to the presumption" that the tires "indeed were used in Massachusetts." Her argument fails. The Legislature has specified with particularity the circumstances in which "for use in the Commonwealth" permissibly may be presumed. See G. L. c. 64I, § 8 (*a*) (presumption that sale is "for storage, use or other consumption" in Massachusetts arises where tangible personal property is sold "for delivery in the commonwealth"); G. L. c. 64I, § 8 (*f*) (presumption that personal property shipped or brought into Commonwealth within six months of purchase is purchased "for storage, use or other consumption in the commonwealth"). There is no Massachusetts statutory presumption of use in the Commonwealth where personal property is sold to a Massachusetts resident outside the Commonwealth, even where the

---

[17]The board's reliance on *Commissioner of Revenue* v. *J.C. Penney Co.*, 431 Mass. 684 (2000), to support its conclusion that "[w]hatever fate befalls the tires once purchased, the use tax is properly imposed if the purchaser *intended to use* the tires in the Commonwealth at the time of the purchase," is not warranted (emphasis added). At issue in the *J.C. Penney* case was the imposition of a use tax on catalogs delivered to Massachusetts residents where the postal service acted at the direction of the company. The use statute was satisfied in that case because there was evidence that *all* of the items on which the use tax was assessed were in fact delivered to residents in Massachusetts, and that undelivered catalogs in Massachusetts were directed to be "carried out of Massachusetts." *Id.* at 689. See G. L. c. 64I, § 8 (*a*). Here, there is no evidence that the tires were shipped or brought into Massachusetts.

[18]She states that the use tax applies to goods "purchased outside Massachusetts for use within the state *that, in fact, are used in the state*" (emphasis added).

goods purchased out of State may be affixed to property registered in Massachusetts.[19] We will not recognize a presumption that the Legislature has not established. See *Gould* v. *Gould*, 245 U.S. 151, 153 (1917) ("In the interpretation of statutes levying taxes it is the established rule not . . . to enlarge their operations so as to embrace matters not specifically pointed out"); 3A N.J. Singer, Sutherland Statutory Construction § 66:3, at 35-36 (rev. 6th ed. 2003) (revenue legislation should not be construed "to add what is not found in the statute").[20]

The absence of a statutory presumption that a vendor's knowledge that a purchaser is a resident of Massachusetts will permit a finding that the goods purchased out of State were purchased "for" use in Massachusetts and actually used in the Commonwealth is particularly significant because Legislatures in other States have enacted just such a presumption.[21,22] The Legislature may, of course, enact such a presumption, but in the

---

[19]Although not relevant to our decision, there is no evidence, let alone substantial evidence, that the tires were installed on vehicles registered in Massachusetts. See *Towle* v. *Commissioner of Revenue*, 397 Mass. 599, 601-602 (1986) (board's decision must be supported by substantial evidence). The board simply made an inference to that effect based on its understanding of the "backdrop" of the Massachusetts motor vehicle registration and operation requirements of Massachusetts.

[20]The commissioner argues that the "presumption" that the tires were used in Massachusetts was "unrebutted" by Town Fair. The use of a presumption to establish use in the Commonwealth is, we have concluded, not permissible in this case. Accordingly, there was no obligation on Town Fair to rebut the "presumption." Cf. *Macton Corp.* v. *Commissioner of Revenue*, 15 Mass. App. Tax. Bd. 53 (1993) (*Macton*), in which the commissioner sought to apply one of the statutory presumptions for assessing use tax, G. L. c. 64I, § 8 (*f*) ("presumed" that personal property shipped or brought into the Commonwealth within six months of purchase was purchased "for storage, use or other consumption in the commonwealth"), to impose use tax where the property was brought into Massachusetts within six months after purchase. The board concluded that the "presence" in Massachusetts of the property (an airplane) within six months of purchase was, without more, not sufficient to impose tax liability where the evidence "indicate[d] that the plane was not purchased for storage, use or consumption in Massachusetts." *Id.* at 58, 59. Thus, the *Macton* case holds that where a statutory presumption is validly invoked by the commissioner, rebuttal evidence by the purchaser (or vendor) may overcome the presumption of use tax liability.

[21]See, e.g., Cal. Rev. & Tax. Code § 6247 (Deering 1996) ("tangible personal property delivered outside this State to a purchaser known by the retailer to be a resident of this State was purchased from a retailer for storage, use or other consumption in this State and stored, used or otherwise consumed

absence of any such statutory authorization, it is error to rely on a presumption that tires sold to a Massachusetts resident outside the Commonwealth were actually used in the Commonwealth. And the principles of interpretation of tax statutes preclude us from "engrafting such language on the statute as written." See *Morton Bldgs., Inc.* v *Commissioner of Revenue*, 43 Mass. App. Ct. 441, 446 (1997).[23]

*Decision of the Appellate Tax Board reversed.*

---

in this State"); Nev. Rev. Stat. § 372.255 (2007) ("it is presumed that tangible personal property delivered outside this State to a purchaser known by the retailer to be a resident of this State was purchased from a retailer for storage, use or other consumption in this State and stored, used or otherwise consumed in this State"); Wis. Stat. Ann. § 77.53(15) (West 2004) ("It is presumed that tangible personal property or taxable services delivered outside this state to a purchaser known by the retailer to be a resident of this state were purchased from a retailer for storage, use or other consumption in this state and stored, used or otherwise consumed in this state").

[22]The board relied on *Montgomery Ward & Co.* v. *State Bd. of Equalization*, 272 Cal. App. 2d 728 (1969), in support of its conclusion that knowledge by Town Fair that the purchasers were Massachusetts residents was sufficient to find that the tires were purchased "for use" in Massachusetts. In the *Montgomery Ward* case, the court was doing nothing more than applying the California statutory presumption. See note 21, *supra*. It cited Cal. Rev. & Tax Code § 6247, noting that "[t]he *code* authorizes the action of the board in . . . assessing the tax on those sales" (emphasis added). *Id.* at 740. Where a cognate statutory provision does not exist in Massachusetts, the board should not have relied on the reasoning of the California court.

[23]In light of our conclusion, we need not address Town Fair's arguments that the board's interpretation of G. L. c. 64I, §§ 2 and 4, violates the due process clause and commerce clause of the United States Constitution.