The Commissioner of Revenue (commissioner) appeals from a judgment on the pleadings in favor of the plaintiff nonprofit organizations, Northeastern University, Boston University, and Wellesley College (universities). As articulated by the commissioner, the sole issue before us is whether the Department of Revenue (department) erroneously denied the universities' applications for the environmental remediation tax credit contained in G. L. c. 62, § 6(j ), and G. L. c. 63, § 38Q (Brownfields tax credits), because the universities achieved the requisite environmental remediation status before the effective date of the amendment that made nonprofit organizations eligible for the credit (June 24, 2006). On appeal, the commissioner argues that the judge did not give the department's interpretation of the statute due deference. Confining our review to the issue solely as articulated by the commissioner and briefed by the parties, we affirm the judgment.
Background. 1. The Brownfields tax credit. The Brownfields tax credit first went into effect on August 5, 1998, applicable to tax years commencing on or after January 1, 1999. See St. 1998, c. 206, § 44. The implementing act provided that an eligible entity which (i) commences and diligently pursues an environmental response action (ii) within three years of the effective date of the act, and (iii) achieves and maintains a "permanent solution" or "remedy operation status"[3] (collectively, required environmental remediation status), (iv) shall "on the date [the required environmental remediation status] is achieved," be allowed a tax credit (v) consisting of a percentage of costs incurred between August 1, 1998, and January 1, 2005. G. L. c. 62, § 6(j ), and G. L. c. 63, § 38Q, inserted by St. 1998, c. 206, §§ 34 & 35 (collectively, statutes). When the Legislature first adopted the Brownfields tax credit, only "taxpayer[s]" ( G. L. c. 62, § 6 [j ] ), and "domestic or foreign corporation[s], or limited liability corporation[s]" ( G. L. c. 63, § 38Q ), were eligible for it.
Subsequent amendments extended the dates by which remediation efforts must commence and the outside time frame for which costs could be credited, but never changed the earliest date that eligible expenses could be incurred, i.e., August 1, 1998. In 2000, for example, the statutes were amended to provide that remediation projects commenced "within five years from the effective date of this section" and that met the other statutory criteria shall be allowed a credit for a percentage of costs incurred between August 1, 1998, and January 1, 2007. St. 2000, c. 159, §§ 120 & 124. Beginning in 2003, however, instead of connecting the commencement of a remediation project to the effective date of enactment of the Brownfields tax credit, the statutes were amended to apply to projects commenced "on or before" a certain date. Thus, the 2003 amendment provided that eligible entities who commence an environmental response on or before August 5, 2005, shall receive a credit for a portion of costs incurred between August 1, 1998, and January 1, 2007. St. 2003, c. 141, §§ 20 & 28. Thereafter, the Legislature continued to extend the Brownfields tax credit by extending the date by which projects must be commenced, along with the range of dates for which costs could be credited, but always kept August 1, 1998, as the start date for credit of eligible costs.
On June 24, 2006, the Legislature enacted St. 2006, c. 123, "An Act Relative to Economic Investments in the Commonwealth to Promote Job Creation, Economic Stability, and Competitiveness in the Massachusetts Economy" (Act). The Act further amended the statutes by (i) extending the date by which a project must commence to August 5, 2011, for a credit of a portion of costs incurred between August 1, 1998, and January 1, 2012, (ii) adding nonprofit organizations to the list of eligible entities that could qualify for the Brownfields tax credit, and (iii) providing a mechanism for sale or transfer of a Brownfields tax credit to a taxpayer with a tax liability under G. L. c. 62 or G. L. c. 63. St. 2006, c. 123, §§ 49 & 63.
Since 2006, the Legislature has continued to extend the date by which an environmental response must commence and the range of dates for recovery of eligible costs. The statutes currently provide that a taxpayer, corporation, or nonprofit organization "which commences and diligently pursues an environmental response action on or before August 5, 2018, and who achieves and maintains a permanent solution or remedy operation ... shall ... be allowed [a credit]" of a percentage of response and removal costs "incurred between August 1, 1998, and January 1, 2019." See St. 2013, c. 38, §§ 53, 54, 68, & 69.
2. The universities' applications. It is undisputed that the universities achieved the requisite environmental remediation status in compliance with G. L. c. 21E,[4] and filed the necessary documentation with the Department of Environmental Protection (DEP) in years prior to June 24, 2006. The universities applied for the Brownfields tax credit in 2012 and 2013. While the universities' applications were pending, however, the department issued directive 13-4,[5] directive 3 of which provides that "[a] nonprofit organization may only receive a Credit based upon documentation of a permanent solution or a remedy operation status submittal to DEP in a taxable year of the nonprofit organization that commenced on or after June 24, 2006." Directive 13-4 specifically provided that directive 3 thereof was applicable to all then pending, as well as future, applications. Relying on directive 3, the department denied the universities' applications.[6] ,[7]
On appeal to the Superior Court, a judge allowed the universities' motion for judgment on the pleadings and overturned the commissioner's decision, concluding the statutes do not limit nonprofit organizations' eligibility for the Brownfields tax credit to projects achieving the requisite environmental remediation status after June 24, 2006, when the statutes were amended to include nonprofit organizations.
Discussion. We review de novo a Superior Court judge's order allowing a motion for judgment on the pleadings under Mass.R.Civ.P. 12(c), 365 Mass. 754 (1974).[8] Wheatley v. Massachusetts Insurers Insolvency Fund, 456 Mass. 594, 600 (2010). In addition, "[w]e review questions of statutory interpretation de novo, ... giving substantial deference to a reasonable interpretation of a statute by the administrative agency charged with its administration enforcement." Onex Communications Corp. v. Commissioner of Rev., 457 Mass. 419, 423 (2010), quoting from Attorney Gen. v. Commissioner of Ins., 450 Mass. 311, 319 (2008). Deference does not mean abdication, however, and "[u]ltimately, ... the interpretation of a statute is a matter for the courts." Onex Communications Corp., 457 Mass. at 424. See Town Fair Tire Centers, Inc. v. Commissioner of Rev., 454 Mass. 601, 604-605 (2009).
"[S]tatutory language, when clear and unambiguous, must be given its ordinary meaning." Bronstein v. Prudential Ins. Co. of America, 390 Mass. 701, 704 (1984). Here, nothing in the statutes or the Act directs attention to the date of the amendments making nonprofit organizations eligible for the Brownfields tax credit as relevant in determining whether they may be eligible for the credit. The statutes, as amended by the Act, expressly apply to remediation projects commenced "on or before" August 5, 2011, and allow a credit for a portion of costs incurred between August 1, 1998, and January 1, 2012. We have reviewed the amendments to the statutes in some detail because the various iterations make it quite clear that if the Legislature intended to make the effective date of the Act applicable to nonprofit organizations' applications, it certainly knew how to do so. Indeed, the original enactment and the first amendment used the effective date of the relevant "section[s]" of the statutes as a reference point. None of the subsequent amendments, however, did so. The Act did not add any language directed at limiting eligibility only to nonprofit organizations' projects that would achieve the requisite environmental remediation status after the 2006 effective date. There is simply nothing in the statutes to suggest that the dates set forth in the Act and subsequent amendments do not apply to nonprofit organizations.[9] We owe the department no deference to an incorrect statutory interpretation. Town Fair Tire Centers, Inc., 454 Mass. at 605.
To the extent the commissioner argues that our interpretation is inconsistent with the economic and environmental stimulus goals of the Act, it is not at all clear to us that the Legislature did not intend to simply put nonprofit entities in the same position that taxpayers and for-profit entities had enjoyed for several years in terms of obtaining a Brownfields tax credit. Providing parity for nonprofit organizations in this manner would be consistent with the stated purpose of the Act: "to provide for economic investments in the commonwealth." St. 2006, c. 123, Preamble. Nonprofit organizations, a major sector of the Massachusetts economy, could use negotiable tax credits based on past expenses to obtain capital for new investments. Moreover, even if applying the dates contained in the statutes to nonprofit organizations' applications could be considered "retroactive" application of the amendment, the Legislature clearly chose the applicable time frames. See Sentry Fed. Sav. Bank v. Co-Operative Cent. Bank, 406 Mass. 412, 414 (1990) (statute operates prospectively unless legislative intent is "unequivocally clear to the contrary"). In addition, the only potentially injured party from retroactive application of the amendment is the Commonwealth, and "[i]t is generally held that where a State enacts retroactive legislation impairing its own rights, it cannot be heard to complain on constitutional grounds." Greenaway's Case, 319 Mass. 121, 123 (1946).
For all of the foregoing reasons, we affirm the judgment.
So ordered.
Affirmed.

When the Brownfields tax credit was implemented, a "permanent solution" occurred when a site no longer posed a "significant risk" to human health or the environment for "any foreseeable period of time." 310 Code Mass. Regs. § 40.0006 (1996). "Remedy operation status" is a response action that has eliminated a condition of any substantial hazard to public health, safety, welfare or the environment and relies upon active operation and maintenance for the purpose of achieving a permanent solution." G. L. c. 21E, § 2, amended by St. 1998, c. 206, § 17.

Also known as the Massachusetts Superfund Law.

"A Directive is a public written statement, signed by the Commissioner, which clarifies the Department's application and interpretation of the Massachusetts tax laws or the Department's current policies and practices in order to assist taxpayers in complying with their Massachusetts tax obligations." 830 Code Mass. Regs. § 62C.3.1(5)(b) (2017). They "are precedential and state the official position of the Department" and "may be relied upon by taxpayers until they are revoked, modified, or superseded." Id. at § 62C.3.1(5)(d) (2017).

Some of the communications from the department indicate that it also relied on directive 1(b) of directive 13-4, which applied only to applications submitted on or after April 5, 2013. At oral argument, the assistant attorney general indicated the department is not relying on directive 1(b) to deny the universities' applications.

The department's interpretation of the statute as it relates to the universities' applications was a departure from the department's earlier interpretations of the statute in response to other nonprofit organizations' applications. The parties stipulated that between 2009 and 2013, tax examiners in the audit division of the department approved fourteen nonprofit organizations' applications for a Brownfields tax credit even if the nonprofit organization had achieved the required remediation status before the taxable year commencing on or after June 24, 2006.

The parties and the Superior Court judge have proceeded as though review of the department's final decision denying the Brownfields tax credit is pursuant to G. L. c. 30A, § 14. The Appellate Tax Board, limited to the jurisdiction conferred on it by statute, does not have jurisdiction over decisions made on the Brownfields tax credit, and the parties correctly did not seek review there. See G. L. c. 58A, § 6. The record contains no details of the hearing before the appeals officer which precipitated the department's final decision, and neither party suggests it was not an adjudicatory hearing as that term is used in G. L. c. 30A. See Space Bldg. Corp. v. Commissioner of Rev., 413 Mass. 445, 449-451 (1992). However, 830 Code Mass. Regs. § 62C.3.1(6)(f) (2017) provides that a "conference shall not be construed as an 'adjudicatory proceeding' as defined by M.G.L. c. 30A." In similar circumstances involving exemptions of real estate taxes over which the Appellate Tax Board lacks jurisdiction, the taxpayer's "sole remedy [is] an action in the nature of certiorari under G. L. c. 249, § 4." Assessors of Worthington v. Commissioners of Hampshire County, 416 Mass. 404, 406-407 (1993). Where the parties have presented a purely legal issue, and "the standards of appellate review are essentially the same in both routes" (G. L. c. 30A, § 14, and G. L. c. 249, § 4 ), Conservation Commn. of Falmouth v. Pacheco, 49 Mass. App. Ct. 737, 741 n.4 (2000), we proceed as the parties have, applying the standard of review applicable to motions on the pleadings.

The commissioner contends the use of the present tense in the Act compels the conclusion that the Legislature did not intend to include the past action of achieving the required environmental remediation status. We disagree. All of the various amendments to the statutes were written in the present tense, and the commissioner does not take the position that as to individual taxpayers and corporations the use of the present tense excludes past actions. We discern no reason to consider the use of the present tense to mean one thing for taxpayers and corporations and another thing for nonprofit organizations.