SENTRY FEDERAL SAVINGS BANK & another[1] vs. THE
CO-OPERATIVE CENTRAL BANK.

Suffolk. December 7, 1989. - January 9, 1990.

Present: LIACOS, C.J., ABRAMS, NOLAN, O'CONNOR, & GREANEY, JJ.

Bank. Share Insurance Fund. Statute, Construction.

Two former cooperative banks, which had converted to Federal savings
banks, were not entitled pursuant to St. 1985, c. 405, § 5, to share in
the liquidation distribution of the deposit insurance fund in which they
had participated, where each bank had withdrawn from the fund upon
accepting a Federal charter prior to the effective date of the act. [413-
414]

CIVIL ACTION commenced in the Superior Court Depart-
ment on April 23, 1987.

The case was heard by John L. Murphy, Jr., J., on a mo-
tion for partial summary judgment.

The Supreme Judicial Court on its own initiative trans-
ferred the case from the Appeals Court.

Brian T. Kenner & Gregory A. Bibler for the plaintiffs.

Robert C. Barber (William F. Looney, Jr., with him) for
the defendant.

NOLAN, J. This case implicates substantially the same is-
sue presented in Andover Sav. Bank v. Co-operative Cent.
Bank, ante 409 (1990), decided today, i.e., claims on the
share insurance fund (fund). There is one significant differ-
ence which we shall discuss without repeating the procedural
and historical background which is the same as the Andover
Sav. Bank case.

Unlike the conversion to a Massachusetts chartered sav-
ings bank in Andover Sav. Bank, supra, here the plaintiffs

[1]Lafayette Federal Savings Bank.

converted to Federal savings banks which are successors to cooperative banks. As a result, the question implicates a different statute. The statute here is G. L. c. 170, § 28, which governs the conversion of a cooperative bank to a Federal savings bank. The precise problem is the effect of an amendment to this statute in 1985 (St. 1985, c. 405, § 5), the relevant language of which is set forth in the margin.[2] The predecessor Sentry Co-operative Bank withdrew from the defendant in 1983 when it converted, and in 1984 the predecessor Lafayette Co-operative Bank also converted to a Federal charter. They argue that the 1985 amendment noted above should apply retroactively to them. We do not agree.

If the plaintiffs had converted to a Federal charter after the 1985 amendment was in effect, they would have been entitled to a distribution but "the aggregate amount of such distributions shall be limited to an amount equal to the

---

[2]General Laws c. 170, § 28, as amended, provides in part: "All amounts required to be paid by the predecessor corporation while a member bank to the Share Insurance Fund of the central bank pursuant to section one of chapter seventy-three, including the income, surplus, undivided profits and other reserves of the Share Insurance Fund, shall be retained by the central bank as a charge for insurance of the shares of such corporation while a member of the said Share Insurance Fund. Such corporation shall, participate in any distributions authorized and made pursuant to section nine of chapter seventy-three of the acts of nineteen hundred and thirty-four, but the aggregate amount of such distributions shall be limited to an amount equal to the amount the corporation would have received had the Share Insurance Fund been liquidated at the time such corporation accepted its federal charter. Thereafter the succeeding association shall be entitled to receive from the central bank the portions, if any, of such other assessments not so paid or required as shall be determined by the central bank with the approval of the commissioner, and such determination shall be final and conclusive upon the central bank, the predecessor corporation and the succeeding association and all other persons then or thereafter interested; provided, that the supreme judicial court shall have jurisdiction to review and to confirm or modify such determination upon the petition of the predecessor corporation or the succeeding association filed within ten days after receipt thereby of notice of such determination. The central bank, in its discretion and subject to the approval of the commissioner, may make disposition of such other assessments, at any time after such conversion is completed, by adjustment pursuant to an agreement with the predecessor corporation or the succeeding association and may pay thereto such amount as may be so agreed upon."

amount the corporation would have received had the [fund] been liquidated at the time such corporation accepted its federal charter." G. L. c. 170, § 28, as amended through St. 1985, c. 405, § 5. Unless the legislative intent is unequivocally clear to the contrary, a statute operates prospectively, not retroactively. *Boston Gas Co.* v. *Department of Pub. Utils.*, 387 Mass. 531, 542 (1982). The plaintiffs received from the defendant all that § 28 provided them, as it was written when they converted. They can demand no more.

Furthermore, the predecessors to the plaintiffs executed termination agreements with the defendant at the time at which each cooperative bank converted from a cooperative bank to a Federal savings bank. These agreements were designed for the "complete and final termination of the obligations, membership, rights and/or interest" of the plaintiffs' predecessor cooperative banks in the defendant. The agreements, after acknowledging the cessation of insurance coverage by the fund on the effective date of the conversions, provide for the payment of the banks' entire interest in the fund. The plaintiffs' argument that a statutory amendment which is effective approximately two years later increases this interest is simply not tenable.

In conclusion, there was no error in the allowance of the defendant's motion for partial summary judgment.

*Judgment affirmed.*