TIMOTHY SMITH vs. MASSACHUSETTS BAY TRANSPORTATION
AUTHORITY.

Suffolk. February 6, 2012. - May 31, 2012.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Massachusetts Bay Transportation Authority. Massachusetts Tort Claims Act. Governmental Immunity. Damages,* Interest. *Practice, Civil,* Interest. *Statute,* Retroactive application.

This court concluded that amendments to the Massachusetts Tort Claims Act, G. L. c. 258, §§ 1-14, and to the enabling act of the Massachusetts Bay Transportation Authority (MBTA), G. L. c. 161A, which together made the MBTA a "public authority" covered by the Tort Claims Act, did not apply retroactively to allow the MBTA the protections of public employer status against a plaintiff whose claims accrued prior to the amendments' effective date of November 1, 2009, and, thus, a plaintiff in a civil action against the MBTA, who obtained a judgment against the MBTA prior to the effective date, was not precluded from recovering prejudgment interest and costs and postjudgment interest that accrued prior to that date, where the MBTA's "new" status as a public employer resulted in a comparative diminution of the substantive rights of persons previously injured by the tortious acts of MBTA employees, and where this court could discern no clear legislative intent that such accrued rights should be diminished retroactively [372-378]; however, the plaintiff was not entitled to recover any such sums accruing on or after the effective date, where the calculation of interest accruing on and after that date did not implicate any previously vested substantive rights, and where, because interest accrued daily, the point in the proceedings to which the statutory interest rate applied was passed each day and, for all practical purposes, the rate of interest in effect since November 1, 2009, was a rate of zero per cent [378-380].

CIVIL ACTION commenced in the Superior Court Department on October 26, 2005.

The case was tried before *Raymond J. Brassard,* J., and a motion for relief from judgment, filed on September 23, 2010, was heard by *John C. Cratsley,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*John P. Knight* (*Jonathan P. Feltner* & *Thomas T. Worboys* with him) for the defendant.

*Michael E. Mone* (*Catherine A. Ryan* with him) for the plaintiff.

LENK, J. Effective November 1, 2009, amendments to the Massachusetts Tort Claims Act, G. L. c. 258, §§ 1-14, and the Massachusetts Bay Transportation Authority's (MBTA's) enabling statute, G. L. c. 161A (collectively, 2009 amendments), made the MBTA a "public employer" covered by the Tort Claims Act. See G. L. c. 258, § 1, as amended through St. 2009, c. 25, § 123; G. L. c. 161A, § 38, as amended by St. 2009, c. 25, §§ 112, 113; St. 2009, c. 25, § 185, as amended by St. 2009, c. 26, § 60. This case presents the question whether the 2009 amendments apply retroactively, allowing the MBTA the protections of public employer status against a plaintiff whose claims accrued prior to November 1, 2009. We conclude that the 2009 amendments do not so apply. Accordingly, the plaintiff is not precluded from recovering prejudgment interest and costs or postjudgment interest against the MBTA that accrued prior to November 1, 2009.

1. *Background.* On July 15, 2005, the plaintiff was involved in a motor vehicle accident with a bus operated by an MBTA employee. The plaintiff filed suit on October 26, 2005, against the MBTA and the bus driver. On September 28, 2009, a jury determined that the accident resulted from the employee's negligence, and they awarded the plaintiff $661,784 in damages. On September 30, 2009, or about a month prior to the amendments' effective date, judgment entered for the plaintiff in "the sum of $661,784.00 *with interest thereon . . . and [the plaintiff's] costs*" (emphasis supplied). See G. L. c. 231, § 6B (in any tort action "there shall be added . . . to the amount of damages [twelve per cent annual] interest thereon . . . from the date of commencement of the action").

A month later, on November 1, 2009, the MBTA became a "public employer" under the Tort Claims Act. St. 2009, c. 25, § 123. St. 2009, c. 26, § 60. Public employers are immune from the award of interest and costs, *Onofrio* v. *Department of Mental Health,* 411 Mass. 657, 658-660 (1992), and on September 23, 2010, while an appeal from the judgment was pending before the Appeals Court, the MBTA filed a motion seeking relief from so much of the judgment as required it to pay interest and costs. See Mass. R. Civ. P. 60 (b) (6), 365 Mass. 828 (1974).

The trial judge denied the motion, determining that the MBTA's new status as a public employer applied only with respect to claims accruing after November 1, 2009. In a memorandum and order pursuant to its rule 1:28, the Appeals Court affirmed,[1] *Smith* v. *Massachusetts Bay Transp. Auth.*, 79 Mass. App. Ct. 1123 (2011), and we granted the MBTA's application for further appellate review.

2. *Discussion.* a. *Interest and costs accruing prior to November 1, 2009.* Whether a statute is to be applied to events occurring prior to the date on which it took effect is in the first instance a question of legislative intent. *Fontaine* v. *Ebtec Corp.*, 415 Mass. 309, 318 (1993). However, where, as here, the Legislature has not spoken directly on the issue of retroactivity, we have presumed that "legislation commonly looks to the future, not to the past." *Federal Nat'l Mtge. Ass'n* v. *Nunez*, 460 Mass. 511, 516 (2011) (*Nunez*), quoting *Fleet Nat'l Bank* v. *Commissioner of Revenue*, 448 Mass. 441, 448-449 (2007) (*Fleet Nat'l Bank*). We have therefore asked "whether applying the statute to the person objecting would have a retroactive consequence in the disfavored sense of 'affecting substantive rights, liabilities, or duties [on the basis of] conduct arising before [its] enactment,' and, if so, [we] apply the presumption that such a retroactive effect was not intended by the Legislature." *Nunez*, *supra* at 517, quoting *Fernandez-Vargas* v. *Gonzales*, 548 U.S. 30, 37-38 (2006). This presumption may be rebutted only by an "unequivocally clear" showing of contrary legislative intent. See *Fleet Nat'l Bank*, *supra* at 449, quoting *Sentry Fed. Sav. Bank* v. *Co-operative Cent. Bank*, 406 Mass. 412, 414 (1990).

As we explain below, the MBTA's "new" status as a public employer results in a comparative diminution of the substantive rights of persons previously injured by the tortious actions of MBTA employees. We discern no clear legislative intent that such accrued rights be diminished retroactively. Thus, we conclude that the 2009 amendments do not preclude the award of interest and costs against the MBTA accruing prior to November 1, 2009.

---

[1]The Appeals Court also affirmed the trial judge's denial of the Massachusetts Bay Transportation Authority's (MBTA's) motion for a new trial, which contained additional claims of error. The MBTA does not pursue those claims before this court.

i. *Effect of the 2009 amendments.* The protections accorded public employers under the Tort Claims Act reflect the common-law doctrine of sovereign immunity. See *Onofrio* v. *Department of Mental Health, supra* at 659. That doctrine holds that, "[i]n general, the Commonwealth or one of its agencies 'cannot be impleaded in its own courts except with its consent.' " *Boxford* v. *Massachusetts Highway Dep't,* 458 Mass. 596, 601 (2010), quoting *DeRoche* v. *Massachusetts Comm'n Against Discrimination,* 447 Mass. 1, 12 (2006). In the normal course, only the Legislature can waive immunity, and the Commonwealth "can be impleaded only in the manner and to the extent expressed [by] statute." *Boxford* v. *Massachusetts Highway Dep't, supra,* quoting *DeRoche* v. *Massachusetts Comm'n Against Discrimination, supra.* Among other functions, the doctrine "protects the public treasury against [depletion by] money judgments." *New Hampshire Ins. Guar. Ass'n* v. *Markem Corp.,* 424 Mass. 344, 351 (1997).

The MBTA is established by statute as a "political subdivision of the [C]ommonwealth." G. L. c. 161A, § 2. It is funded in part from the Commonwealth's treasury, G. L. c. 161A, § 8, and in part from the budgets of the cities and towns that it serves. G. L. c. 161A, § 9. Under the doctrine of sovereign immunity, therefore, the MBTA is not amenable to suit without the Commonwealth's express consent.

Such consent was first given, on the MBTA's creation, by G. L. c. 161A, § 21, inserted by St. 1964, c. 563, § 18. That statute made the MBTA "liable in tort . . . in the same manner as though it were a street railway company." *Id.* See G. L. c. 161A, § 38 (as codified in 1999). It thereby placed the MBTA on the same footing as any private transport operator, requiring it, among other things, to pay interest and costs in accordance with the law generally applicable to claims in tort. See, e.g., *Mirageas* v. *Massachusetts Bay Transp. Auth.,* 391 Mass. 815, 819-821 (1984).

Effective November 1, 2009, however, the Legislature annulled the waiver of immunity in G. L. c. 161A, § 38. See St. 2009, c. 25, §§ 112-113. It provided instead that the MBTA was to be treated as a "public employer" under the Tort Claims Act. See St. 2009, c. 25, § 123. The Tort Claims Act provides

that specified "[p]ublic employers," each of them political subdivisions of the Commonwealth, "shall be liable for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment." G. L. c. 258, §§ 1, 2.

As previously stated, sovereign consent to suit is effective only "to the extent expressed [by] statute," *Boxford* v. *Massachusetts Highway Dep't*, *supra*, and the extent of the MBTA's liability under the 2009 amendments is narrower than that available prior to November 1, 2009. Specifically, G. L. c. 258, § 2, provides that public employers "shall not be liable for interest prior to judgment." Contrast *Mirageas* v. *Massachusetts Bay Transp. Auth.*, *supra* at 819-821. We have determined also that the Tort Claims Act does not waive the Commonwealth's immunity from the recovery of postjudgment interest or costs. See *Onofrio* v. *Department of Mental Health*, 411 Mass. 657, 658-660 (1992).

ii. *Substantive rights.* The effect of the 2009 amendments in narrowing the scope of the Commonwealth's consent to suit is substantive within the meaning of our cases on retroactivity.

"[T]he distinction between legislation concerning 'substantive rights,' and legislation concerning 'only procedures and remedies' " is easy to enunciate, but often "difficult to draw." *Fleet Nat'l Bank*, *supra* at 449, quoting *City Council of Waltham* v. *Vinciullo*, 364 Mass. 624, 626-627 (1974). Those statutes we have determined to be merely procedural have fallen broadly into two categories. See *id.* at 449-450, and cases cited. The first relates to statutes regulating the rules of "practice, procedure or evidence." See *Gray* v. *Commissioner of Revenue*, 422 Mass. 666, 670 (1996), quoting *Goodwin Bros. Leasing* v. *Nousis*, 373 Mass. 169, 173 (1977). The second encompasses "remedial" statutes changing the procedure for the enforcement of a preexisting right or adding to the available means of civil enforcement. See *Kagan* v. *United Vacuum Appliance Corp.*, 357 Mass. 680, 683-684 (1970). What such statutes have in common is that they do not "in reality materially affect[] substantive rights previously acquired." *Wynn* v. *Assessors of Boston*, 281 Mass. 245, 249 (1932).

In contrast, "legislation limiting or increasing the measure of liability, while arguably remedial in the broad sense of that word, generally is considered to impair the substantive rights of a party who will be adversely affected by the legislation."[2] *Rosnov* v. *Molloy*, 460 Mass. 474, 479 (2011), quoting *Fontaine* v. *Ebtec Corp.*, 415 Mass. 309, 319-320 (1993). See *USM Corp.* v. *Marson Fastener Corp.*, 392 Mass. 334, 353 (1984) ("statutes changing the measure of damages after a tort ha[s] been committed" are generally substantive).

If the 2009 amendments were read to preclude the plaintiff from recovery of interest and costs accruing prior to November 1, 2009, it would result in a change in the measure of damages available to the plaintiff. The award of prejudgment interest, in particular, is a significant component of the substantive remedy provided by tort law.

Under the common law of torts, at the time of an accident, an injured party accrues a right, albeit an inchoate one, "to be made whole and compensated for" injuries wrongfully inflicted by a tortfeasor. *G.E. Lothrop Theatres Co.* v. *Edison Elec. Illuminating Co.*, 290 Mass. 189, 194 (1935), and cases cited. However, such compensation is rarely immediately forthcoming. As in this case, there is often a substantial "delay between the [injury] and the payment of compensation." *Verrochi* v. *Commonwealth*, 394 Mass. 633, 637 (1985). As a result of such delay, the plaintiff incurs additional injury, including the depreciation of his eventual recovery. See *id.*, and cases cited. The award of interest compensates the plaintiff for this additional injury.[3] See *Trinity Church in Boston* v. *John Hancock Mut. Life Ins. Co.*, 405 Mass. 682, 684 (1989) (*Trinity Church*), citing

---

[2]That principle is most frequently applied in the context of an increase in liability rather than a limitation on recovery. See, e.g., *Fontaine* v. *Ebtec Corp.*, 415 Mass. 309, 319-320 (1993), and cases cited. See also *Landgraf* v. *USI Film Prods.*, 511 U.S. 244, 284 (1994) (absent clear legislative intent "we [have never] read a statute substantially increasing the monetary liability of a private party to apply to conduct occurring before the statute's enactment"). The same logic applies with equal force to a diminution in a plaintiff's right to recovery. See *Cudlassi* v. *MacFarland*, 304 Mass. 612, 613 (1939) (statute enacted after injury did not limit "right to double remedial damages," which arose "at the time of the injury").

[3]By statute, however, interest is computed not from the date of injury but, rather, "from the date of commencement of the action," G. L. c. 231, § 6B,

*Murphy's Case*, 352 Mass. 233, 234-235 (1967) ("Interest is paid as compensation for delay").

As such, prejudgment interest is often described as an integral component of compensatory damages. See *Militello* v. *Ann & Grace, Inc.*, 411 Mass. 22, 26 n.4 (1991), quoting *Turcotte* v. *DeWitt*, 333 Mass. 389, 392 (1955) (" 'damages' include 'both the original debt or damage and whatever interest ought to be added to make a just verdict' "). Although postjudgment interest is not an element of compensatory damages, it serves an identical function. See *Onofrio* v. *Department of Mental Health*, *supra* at 660 n.4, quoting *Foley* v. *Lowell*, 948 F.2d 10 (1st Cir. 1991) ("the only way in which a[n] . . . award will retain its stated worth is by adding interest in order to compensate for delay in payment from that point forward").

Denying the plaintiff the recovery of interest accruing prior to the effective date of the 2009 amendments[4] would compromise the plaintiff's substantive right to be made whole by denying him compensation for the aggravation of his injury for four years.[5]

iii. *Clear indication of legislative intent.* Because the 2009 amendments modify the substantive rights of tort plaintiffs, we will only apply the amendments retroactively "[i]f it appears by necessary implication from the words, context or objects of [the

which is ordinarily the date on which the plaintiff first files suit. See *Gill* v. *North Shore Radiological Assocs., Inc.*, 385 Mass. 180, 182 (1982). As we have previously recognized, the statute is in conflict with the theory behind the award of prejudgment interest, that "interest should run from the date of the injury." *Bernier* v. *Boston Edison Co.*, 380 Mass. 372, 388 (1980). See *H.D. Foss & Co.* v. *Whidden*, 254 Mass. 146, 151-152 (1925) (applying common-law rule that interest is computed "from the time of the injury"). The statutory formula may be a matter of "administrative convenience." *Bernier* v. *Boston Edison Co.*, *supra* at 388-389.

[4]Interest will have begun accruing at a rate of twelve per cent on the date of commencement of the action, which is ordinarily the date on which the plaintiff filed suit. See note 9, *infra*.

[5]We note also that the statute would limit the MBTA's aggregate liability in certain cases to $100,000, see G. L. c. 258, § 2, notwithstanding that this sum may not fully compensate a plaintiff for his or her medical expenses, lost wages, and pain and suffering. Although the MBTA does not contend that this liability cap should apply in the present action, we note that its retroactive application in cases where the $100,000 limit would otherwise not apply would result in a further substantive reduction in the measure of recovery available to plaintiffs whose claims accrued prior to November 1, 2009.

amendments] that the Legislature intended [them] to be retroactive in operation." *Fleet Nat'l Bank, supra* at 449, quoting *Canton* v. *Bruno*, 361 Mass. 598, 606 (1972). Such implication must be "unequivocally clear." *Sentry Fed. Sav. Bank* v. *Cooperative Cent. Bank*, 406 Mass. 412, 414 (1990).

The amendments contain no express language of retroactivity. Contrast *Boston Edison Co.* v. *Massachusetts Water Resources Auth.*, 459 Mass. 724, 743 (2011) (calculation of interest in eminent domain proceedings under G. L. c. 79, § 37, as amended through St. 2004, c. 352, § 178, provided that statute "shall apply to those pending cases in which no final judgment has entered as of the effective date of this act"). The MBTA argues that the purpose of the 2009 amendments nonetheless requires that the MBTA be treated as a public employer on a retrospective basis. It contends that the Legislature's motivation in passing the 2009 amendments was to relieve pressure on the MBTA's budget, and that the Legislature communicated the urgency of this goal when it designated the legislation an "emergency." The MBTA points out that the achievement of the savings contemplated by the Tort Claims Act would be retarded if plaintiffs injured prior to November 1, 2009, were exempt from its strictures.

If adopted, the MBTA's argument would amount to a reversal of the general presumption against retroactivity. To some degree, the purposes of almost any statute might be better achieved if the statute were applied retroactively. Yet, "that 'retroactive application of a new statute would vindicate its purpose more fully . . . is not sufficient to rebut the presumption against retroactivity.' " *Nunez, supra* at 521, quoting *Landgraf* v. *USI Film Prods.*, 511 U.S. 244, 285-286 (1994).

The Legislature's designation of St. 2009, c. 25, as emergency legislation does not change this analysis. The inclusion of an emergency preamble demonstrates only that the Legislature intended the statute to take effect without regard for the ninety-day waiting period otherwise provided by art. 48 of the Amendments to the Massachusetts Constitution.[6] See *Nunez, supra*.

Thus, the MBTA fails to identify any clear indication of

---

[6]The provision states: "No law passed by the general court shall take effect earlier than ninety days after it has become a law, excepting laws declared to be emergency laws . . . ." Art. 48 of the Amendments to the Massachusetts Constitution, The Referendum, Part I.

legislative intent that its status as a public employer apply retroactively.

b. *Interest accruing on and after November 1, 2009.* The parties differ also on how interest should be calculated for the period of time on and after November 1, 2009. The MBTA argues that, even if the 2009 amendments apply prospectively only, they would not permit accrual of interest on and after November 1, 2009. The plaintiff responds that final judgment entered prior to November 1, 2009, and that postjudgment interest should be controlled by the law as it existed on the date of final judgment.

The plaintiff's position is contrary to our settled precedent. As noted in *Trinity Church*, and as explained at length above, interest is awarded as "compensation for delay." *Trinity Church, supra* at 684. It accrues, therefore, only upon the actual occurrence of delay. Prior to the 2009 amendments' effective date, the plaintiff had no vested right to interest for the period subsequent to that date, because he had not yet suffered that period of delay. See *id.* (postjudgment interest); *Porter* v. *Clerk of the Superior Court*, 368 Mass. 116, 119 (1975) (*Porter*) (prejudgment interest). Furthermore, the judgment provided the plaintiff no vested right to the continued accrual of postjudgment interest at a set rate. See *Budish* v. *Daniel*, 417 Mass. 574, 579 (1994). Accordingly, the calculation of interest accruing on and after November 1, 2009, does not implicate any previously vested substantive rights.[7]

Absent such implication of substantive rights, we do not apply the presumption against retroactivity, but instead "look to the stage of the proceedings affected by the change and determine whether that stage has been completed on the effective date of the amendment. If the point in the proceedings to which the statutory change is applicable has already passed, the proceedings are not subject to that change. If, on the other hand, that point has not yet been reached, the new provisions apply."[8] *Porter, supra* at 118.

---

[7]This is in contrast to interest for the period prior to the effective date. See part 2.a, *supra*. Because the injury compensated by such interest is the delay suffered prior to November 1, 2009, the plaintiff's right to such interest vested prior to that date.

[8]The same rule applies to the calculation of costs, an issue raised by the parties but not independently briefed.

Here, interest accrues daily, and thus "the point in the proceedings to which the statutory interest rate applies is passed each day, and the rate applicable on each day is that in effect at the time." *Trinity Church, supra* at 684, quoting *Porter, supra*. For all practical purposes, the rate of interest in effect since November 1, 2009, is a rate of zero per cent. Thus, under *Trinity Church, supra*, the plaintiff is owed no interest for the continued delay in payment since that date.[9]

The plaintiff attempts to distinguish *Trinity Church*. He observes that *Trinity Church* dealt with a statute directly and solely addressing interest rates, whereas the MBTA's status as a public employer has multiple effects. Although this observation is correct, the logic of our prior cases does not depend on the singular purpose of a statute — "[l]egislation is frequently multipurposed . . . ," *Arlington Heights* v. *Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 265 n.11 (1977), quoting *McGinnis* v. *Royster*, 410 U.S. 265, 276-277 (1973) — and the plaintiff does not contest that one purpose of the 2009 amendments was to preclude the recovery of interest against the MBTA.

Further, while we recognize that the 2009 amendments make no express reference to interest, we do not think it appropriate to elevate form over purpose and effect. Such a result would introduce uncertainty in the application of future statutes bearing on interest, without any reason to think that the Legislature

---

[9]We provide, in the interest of clarity, four examples. First, a plaintiff injured on October 31, 2006, who files suit on October 31, 2007, obtains judgment on October 31, 2008, and is paid by the MBTA on October 31, 2009, is entitled to two years of interest, running from October 31, 2007, to October 31, 2009, at a rate of twelve per cent. Second, that same plaintiff would not be entitled to any additional interest even if payment were delayed for an additional year, to October 31, 2010. Third, a plaintiff who files suit on October 31, 2008, obtains judgment on October 31, 2010, and receives payment on October 31, 2011, is entitled to only one year of interest at twelve per cent, i.e., the interest accruing from October 31, 2008, through October 31, 2009. Fourth, a plaintiff injured on June 30, 2009, who brings suit on November 2, 2009, although not subject to retroactive application of the amendment, is nonetheless unable to collect any interest on the judgment that may enter. In short, the plaintiff's ability to recover interest does not depend on whether the interest sought is prejudgment or postjudgment interest. The sole relevant question is whether the interest accrued prior to the 2009 amendments' effective date or whether it accrued on or after that date.

intended such inconsistent results.[10] Contrast *Board of Educ.* v. *Assessor of Worcester*, 368 Mass. 511, 513-514 (1975) (statute must be interpreted in light of its manifest objects, and also of other legislation having similar objects).

The plaintiff emphasizes also that *Trinity Church* dealt with an increase in the statutory interest rate, rather than the reduction at issue here. Absent any showing, however, that, prior to November 1, 2009, the plaintiff obtained a vested right to continue receiving interest at the statutory rate, that is a distinction without a difference. See *Fleet Nat'l Bank, supra* at 450-451 (applying new lower rate of interest from effective date of statute). In sum, we are unconvinced by the plaintiff's attempts to distinguish *Trinity Church.*

Our general rule is that a statute affecting the interest payable prior to judgment, or on a judgment, shall not apply retroactively but shall instead apply prospectively from the effective date of that statute. See *Fleet Nat'l Bank, supra*; *Trinity Church, supra*; *Porter, supra.* There is no special circumstance requiring derogation from that rule here. The MBTA was not a public employer prior to November 1, 2009, and is therefore not entitled to the protections of that status for claims accrued prior to that date. Conversely, the plaintiff obtained no vested right to the continuing accrual of interest on and after November 1, 2009, and is therefore not entitled to recover interest accruing from the MBTA's continuing delay in payment since that date.

The plaintiff is entitled to interest and costs accruing between the date of commencement of the action and November 1, 2009, but may not recover any such sums accruing on or after November 1. Accordingly, the case is remanded to the Superior Court where a new judgment will enter awarding prejudgment and postjudgment interest and costs consistent with this opinion.

*So ordered.*

---

[10]Absent clear language, courts have encountered particular difficulty in determining on a case-by-case basis when and how the Legislature intended that a new rate of interest would apply to cases already in litigation. See, e.g., *Kaiser Aluminum & Chem. Corp.* v. *Bonjorno*, 494 U.S. 827, 833 (1990) (noting divergent approaches followed by circuit courts of the United States Court of Appeals on application of 28 U.S.C. § 1961). The consistent application of the rule in *Trinity Church in Boston* v. *John Hancock Mut. Life Ins. Co.*, 405 Mass. 682, 684 (1989), provides valuable certainty both to legislative drafters and the courts.