NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12108


ODIN ANDERSON & others[1]  vs.  NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH PA & others.[2]



Middlesex.     October 6, 2016. - February 2, 2017.


Present:  Gants, C.J., Botsford, Lenk, Hines, Gaziano, & Lowy,
Budd, JJ.



Consumer Protection Act, Insurance, Unfair or deceptive act,
     Offer of settlement, Damages.  Insurance, Settlement of
     claim.  Damages, Consumer protection case, Interest,
     Punitive.  Interest.  Judgment, Interest.  Practice, Civil,
     Judgment, Damages, Interest.




     Civil action commenced in the Superior Court Department on
March 13, 2003.

     The case was heard by Brian A. Davis, J., and motions to
alter or amend the judgment were also heard by him.

     After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.


_____

     [1] Kerstin Anderson and Katarina Anderson, by her father and
next friend, Odin Anderson.

     [2] American International Group Technical Services, Inc., &
AIG Claims Services, Inc.

Kathleen M. Sullivan for National Union Fire Insurance Company of Pittsburgh PA.

Leonard H. Kesten (Richard E. Brody also present) for the plaintiffs.

GAZIANO, J.  In this appeal, we consider the proper measure of punitive damages to be assessed against defendants who engage in unfair or deceptive insurance settlement practices in violation of G. L. c. 176D, § 3, and G. L. c. 93A, § 9 (3).  The plaintiffs -- Odin Anderson, his wife, and his daughter -- filed a personal injury action in the Superior Court for serious injuries Odin[3] suffered after being struck by a bus owned by Partners Healthcare Systems, Inc. (Partners), that was being driven by one of its employees.  The plaintiffs filed a separate action, under G. L. c. 176D, and G. L. c. 93A, against Partner's insurers and claims representatives; proceedings in that action were stayed pending resolution of the underlying tort claims.  After a trial, a Superior Court jury awarded Anderson $2,961,000[4] in damages in the personal injury action, and awarded his wife and daughter $110,000 each.  At a subsequent, jury-waived trial, a different Superior Court judge found that the insurers and claims representatives violated G. L. c. 93A and G. L. c. 176D by their "egregious," "deliberate or callously indifferent"

---

[3] Because the plaintiffs share a last name, we refer to them by their first names.

[4] This amount was later reduced by forty-seven per cent based on the jury's finding of comparative negligence.

actions, "designed to conceal the truth, improperly skew the legal system and deprive the Andersons of fair compensation for their injuries for almost a decade."  Based on these findings, the judge concluded that the insurers' and claims representatives' "misconduct warrants the maximum available sanction . . . , both as punishment for what transpired and as a deterrent to similar conduct in the future."  He awarded the plaintiffs treble damages, using as the "amount of the judgment" to be multiplied the combined amount of the underlying tort judgment and the accrued postjudgment interest on that judgment.  See G. L. c. 93A, § 9 (3); G. L. c. 176D, § 3 (9) (f) (where violation of G. L. c. 176D is wilful, damages are to be multiplied pursuant to G. L. c. 93A, § 9 [3]).  The Appeals Court affirmed the judgment of liability and the amount of the award of damages, in an unpublished memorandum and order issued pursuant to its rule 1:28.  See Anderson v. National Fire Ins. Co. of Pittsburgh PA, 88 Mass. App. Ct. 1117 (2015).

    We granted the defendants' application for further appellate review, limited to the issue whether postjudgment interest was included properly in the "amount of the judgment" to be multiplied under G. L. c. 93A, § 9 (3).  We conclude that in a case where the amount of actual damages to be multiplied due to a wilful or knowing violation of G. L. c. 93A or G L.

c. 176D are based on the amount of an underlying judgment, that amount does not include postjudgment interest.

1. Background. On September 2, 1998, while crossing Staniford Street in Boston, Odin was struck and injured by a bus owned by Partners and operated by Partners' employee Norman Rice. As a result of the collision, he sustained serious injuries, including a fractured skull and intracerebral hemorrhage, that ultimately required more than one year of medical treatment.

At the time of the accident, Partners and Rice were insured under primary and excess policies issued by National Union Fire Insurance Company of Pittsburgh PA. American International Group Claims Services, Inc., the primary insurer, and American International Group Technical Services, Inc., the excess insurer, were responsible for adjusting claims on these policies.

The plaintiffs, through counsel, sought to reach a settlement agreement with the defendants. The defendants rejected the plaintiffs' demand for settlement and declined to enter into settlement negotiations. As a result, in May, 2001, the plaintiffs filed a personal injury action against Partners and Rice, claiming negligent operation of a motor vehicle, negligent infliction of emotional distress, and loss of consortium. In March, 2003, the plaintiffs filed a separate

action against all of the defendants under G. L. c. 176D, § 3, and G. L. c. 93A, § 9 (3), alleging wilful and egregious failure to conduct a reasonable investigation of the plaintiffs' claims, and failure to effectuate a prompt, fair, and equitable settlement, notwithstanding that liability had become "reasonably clear" by the time the plaintiffs filed their initial complaint. Proceedings in the second action were stayed, on the parties' joint motion, pending resolution of the underlying tort action.

Trial in the tort case took place in June and July of 2003. The jury found that Odin had suffered $2,961,000 in damages but that he was comparatively negligent for forty-seven per cent of his injuries, thereby reducing the award of damages to $1,569,330.[5] Judgment entered for Odin on July 10, 2003, in the amount of $2,244,588.93; the total amount included costs and mandatary prejudgment interest, as required under G. L. c. 231, § 6B, of approximately $450,000.

The defendants appealed to the Appeals Court from certain evidentiary rulings and from the judge's instructions on comparative negligence. In August, 2008, the Appeals Court affirmed the judgment, Anderson v. Rice, 72 Mass. App. Ct. 1114

[5] The jury also awarded $110,000 each to Kerstin and Katarina, Odin's wife and daughter. In April, 2007, the parties reached an agreement to settle the loss of consortium claims, and Kerstin and Katarina each received $204,569.13.

(2008), and we thereafter denied the defendants' application for further appellate review, see 452 Mass. 1107 (2008). In December, 2008, the defendants paid the amount of the damages due to Odin on the underlying tort judgment, as well as the five years of statutorily-mandated postjudgment interest accrued on that judgment between its date of entry in the Superior Court and the issuance of the Appeals Court's opinion. The amount ultimately paid to Odin totaled $3,252,857.80, which included $1,284,243.17 in postjudgment interest.

In September, 2013, a second Superior Court judge conducted a ten-day jury-waived trial on the G. L. c. 176D and G. L. c. 93A action. His decision containing findings of fact, rulings of law, and an order for judgment issued in April, 2014. The judge found that the defendants violated G. L. c. 176D, § 3 (9) (d), by failing to "conduct a reasonable investigation . . . based on all available evidence," including by suppressing unfavorable evidence and offering fictitious evidence; failing to "effectuate prompt, fair and equitable settlement of claims in which liability . . . ha[d] become reasonably clear"; and pursuing an unreasonable appeal of the underlying personal injury judgment. The judge also concluded that the defendants' violations of G. L. c. 176D had been wilful and egregious, warranting an award of punitive damages under G. L. c. 93A, § 9 (3). The judge determined that the amount to be multiplied

under G. L. c. 93A, § 9 (3), was double the amount of the underlying personal injury judgment that had entered in 2003, combined with the postjudgment interest that had accrued between the date of entry and the date of the defendants' payment in 2008.

The parties filed motions to modify the judgment, pursuant to Mass. R. Civ. P. 59 (e), 365 Mass. 827 (1974). The plaintiffs asserted that the judge's doubling of the amount of the underlying 2003 judgment was inconsistent with his stated purpose to impose "maximum available sanctions." They argued that the maximum award of punitive damages available under G. L. c. 93A, § 9 (3), is three times the amount of the judgment rendered in the underlying tort action. The defendants argued, by contrast, that the judge improperly included postjudgment interest in the amount to be multiplied. In June, 2014, the judge issued an amended judgment that increased the amount of the punitive damages to three times the amount of the underlying judgment. He also rejected the defendants' "unduly restrictive view" of punitive damages under G. L. c. 93A, § 9 (3), and retained the postjudgment interest in the amount to be multiplied.[6]

---

[6] The judge awarded the plaintiffs punitive damages in the amounts of $9,758,573.40 to Odin and $613,707.39 each to Kerstin and Katarina. Of that amount, approximately $4.2 million was

2.  Discussion.  The statutory framework governing the
plaintiffs' claims is well established.  See Rhodes v. AIG
Domestic Claims, Inc., 461 Mass. 486, 494-495 (2012) (describing
interplay between related G. L. c. 176D, § 3 [9] [f], and G. L.
c. 93A, § 9 [3], claims).  An insurance company commits an
unfair claim settlement practice if it "[f]ail[s] to effectuate
prompt, fair and equitable settlements of claims in which
liability has become reasonably clear."  G. L. c. 176D,
§ 3 (9) (f).  "[A]ny person whose rights are affected by another
person violating the provisions of [G. L. c. 176D, § 3 (9) (f),]
is entitled to bring an action to recover for the violation
under G. L. c. 93A, § 9" (quotations omitted).  See Rhodes,
supra at 494.  If the fact finder concludes that an insurer has
failed to effectuate a prompt, fair, and equitable settlement,
causing injury, the plaintiff is entitled to the greater of
actual damages or statutory damages of twenty-five dollars.
G. L. c. 93A, § 9 (3).  Where an insurer's action was "willful
or knowing" (or, as here, both), the judge must award multiple
damages.  Id.  General Laws c. 93A, § 9 (3), requires that the
judge "shall" award punitive damages of "up to three but not
less than two times" the actual damages in the underlying
action.  The statute further provides that "[f]or the purposes

---

attributable to the trebling of approximately $1.4 million in
postjudgment interest.

of this chapter, the amount of actual damages to be multiplied by the court shall be the amount of the judgment on all claims arising out of the same and underlying transaction or occurrence." (emphasis supplied).  Id.

The question before us is whether "the amount of the judgment" that serves as the measure of "actual damages" to be doubled or trebled under G. L. c. 93A, § 9 (3), includes the amount of any postjudgment interest that accrued on that judgment before it was paid.  In examining this issue we consider (a) the plain language of G. L. c. 93A, § 9 (3); (b) the nature of pre- and postjudgment interest; and (c) the purpose of the punitive damages available under the statute.

a.  Statutory language.  As with every statutory analysis, our interpretation of G. L. c. 93A, § 9 (3), begins with the plain language of the statute.  See International Fid. Ins. Co. v. Wilson, 387 Mass. 841, 853 (1983).  "All the words of a statute are to be given their ordinary and usual meaning, and each clause or phrase is to be construed with reference to every other clause or phrase without giving undue emphasis to any one group of words, so that, if reasonably possible, all parts shall be construed as consistent with each other so as to form a harmonious enactment effectual to accomplish its manifest purpose."  Worcester v. College Hill Props., LLC, 465 Mass. 134, 139 (2013), quoting Selectmen of Topsfield v. State Racing

Comm'n, 324 Mass. 309, 312-313 (1949).  Although the "[w]ords and phrases" of the statutory text "shall be construed according to the common and approved usage of the language," "technical words and phrases and such others as may have acquired a peculiar and appropriate meaning in law shall be construed and understood according to such meaning."  G. L. c. 4, § 6, Third.  Where "the language is clear and unambiguous, it is conclusive as to the intent of the Legislature."  Deutsche Bank Nat'l Trust Co. v. Fitchburg Capital, LLC, 471 Mass. 248, 253 (2015).

In common understanding, a "judgment" is "a legal decision; an order or sentence given by a judge or law court"; or "a debt, resulting from a court order."  Webster's New Universal Unabridged Dictionary 990 (2d ed. 1983).  This is consistent with the more technical, legal definition of a "judgment" as a "court's final determination of the rights and obligations of the parties in a case."  Black's Law Dictionary 970 (10th ed. 2014).  See Shawmut Community Bank, N.A. v. Zagami, 419 Mass. 220, 225 (1994), quoting Gibbs Ford, Inc. v. United Truck Leasing Co., 399 Mass. 8, 11 (1987) ("the term 'judgment' refers to the final adjudicating act of the judge 'disposing of all claims against all the parties to the action'").

The statutory language in question here, "the amount of the judgment," does not provide any express guidance as to whether the "judgment" to be multiplied for wilful or knowing misconduct

encompasses postjudgment interest.  Nor is this question clarified elsewhere in the statute.  Where, as here, the meaning of the statutory language is "sufficiently ambiguous to support multiple, rational interpretations, . . . we look to the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated" (citations and quotations omitted).  Kain v. Department of Envtl. Protection, 474 Mass. 278, 286 (2016).

b.  Nature of pre- and postjudgment interest.  As the Legislature has enacted two statutes mandating the payment of interest on judgments, see G. L. c. 231, § 6B (prejudgment interest); G. L. c. 235, § 8 (postjudgment interest), we turn to them for guidance.[7]  See Connors v. Annino, 460 Mass. 790, 796 (2011), quoting Canton v. Commissioner of the Mass. Highway Dep't, 455 Mass. 783, 791-792 (2010) (we attempt to "construe statutes that relate to the same subject matter as a harmonious whole and avoid absurd results").  See, e.g., Canton, supra (construing differing provisions of Massachusetts Environmental

---

[7] In common usage, "interest" is defined as "money paid for the use of money."  Webster's New Universal Unabridged Dictionary 956 (2d ed. 1983).  In legal understanding, "interest" is "compensation . . . allowed by law for the use or detention of money, or for the loss of money by one who is entitled to its use."  Black's Law Dictionary 935 (10th ed. 2014).  Interest is thus, by its nature, an amount charged and owed that is distinct from the amount of the principal.

Protection Act). "If the language of the statute is 'fairly susceptible [of] a construction that would lead to a logical and sensible result' . . . we will construe [it] so 'as to make [it an] . . . effectual piece[] of legislation in harmony with common sense and sound reason.'" Commonwealth v. Williams, 427 Mass. 59, 62, (1998), quoting Commonwealth v. A Juvenile, 16 Mass. App. Ct. 251, 254 (1983).

With respect to prejudgment interest, G. L. c. 231, § 6B, provides that, in a tort case involving personal injury or damage to property, "there shall be added by the clerk of court to the amount of damages interest thereon . . . from the date of commencement of the action." (emphasis supplied). Because prejudgment interest is "added . . . to the amount of damages," it becomes an integral part of the amount of the judgment itself. See, e.g., R.W. Granger & Sons v. J & S Insulation, Inc., 435 Mass. 66, 84 (2001) (prejudgment interest forms part of underlying judgment and therefore is multiplied in computing award under G. L. c. 93A); City Coal Co. of Springfield, Inc. v. Noonan, 424 Mass. 693, 695 (1997), S.C., 434 Mass. 709 (2001) (prejudgment interest forms part of judgment for purpose of calculating postjudgment interest). Prejudgment interest is included in the judgment because it compensates the prevailing party for the time value of money accrued before resolution of the legal dispute, and thus represents an "integral component of

compensatory damages."  Smith v. Massachusetts Bay Transp.
Auth., 462 Mass. 370, 376 (2012).

By contrast, postjudgment interest "is not an element of
compensatory damages."  Id.  Postjudgment interest serves to
provide compensation to the prevailing party for delay in
payment after a nonprevailing party's underlying obligation has
been established.  See Chapman v. University of Mass. Med. Ctr.,
423 Mass. 584, 587 (1996) (postjudgment interest is not part of
underlying claim).  Thus, the postjudgment interest statute,
G. L. c. 235, § 8, provides that "[e]very judgment for the
payment of money shall bear interest from the day of its
entry . . ." (emphasis supplied).  See Kaiser Aluminum & Chem.
Corp. v. Bonjorno, 494 U.S. 827, 835-836 (1990) ("purpose of
postjudgment interest is to compensate the successful plaintiff
for being deprived of compensation for the loss from the time
between the ascertainment of the damage and the payment by the
defendant" [citation omitted]).  Put another way, in every
context other than G. L. c. 93A, while prejudgment interest is
added to a judgment and therefore forms an integral part of it,
postjudgment interest is borne by the judgment and is separate
and distinct from it.

The plaintiffs urge that we read the requirement of G. L.
c. 235, § 8, as indicating that, in the context of G. L. c. 93A,
postjudgment interest is part of the judgment itself, subject to

doubling or trebling for wilful or knowing misconduct.  In our view, however, the language of the statute implies the opposite conclusion.  That a judgment "bears" interest suggests that interest is not an inherent part of the judgment itself but, rather, something accrued in addition.  See Black's Law Dictionary 183 (10th ed. 2014) (defining to "bear" as to "support or carry" or to "produce as yield").  That a judgment supports, carries, or produces interest indicates that the interest is separate and distinct from the judgment.  The statutory language is consistent with this common understanding of its words:  the Legislature chose not to include in the statute mandating postjudgment interest that such interest is to be "added . . . to the amount of damages," in direct contrast to the language it chose with respect to prejudgment interest.[8]  See G. L. c. 231, § 6B.

The view that postjudgment interest is separate and distinct from the underlying amount of the damages is supported by statutory provisions and rules of civil procedure in other contexts, such as those governing the form of executions.

---

[8] Although the issues confronting us were different, and the question of postjudgment interest was not the focus of the decisions, on two prior occasions we have treated postjudgment interest as properly excluded from the "amount of the judgment" for purposes of a multiplied damage calculation under G. L. c. 93A, § 9 (3).  See Rhodes v. AIG Domestic Claims, Inc., 461 Mass. 486, 498-500 (2012); R.W. Granger & Sons v. J & S Insulation, Inc., 435 Mass. 66, 84 (2001).

General Laws c. 235, § 8, provides that an execution of a money judgment shall "specify the day upon which judgment is entered, and shall require the collection or satisfaction thereof with interest from the date of its entry."  Likewise, Mass. R. Civ. P. 54 (f), 382 Mass. 822 (1980), provides that "[e]very judgment for the payment of money shall bear interest up to the date of payment of said judgment" (emphasis supplied).[9]  If postjudgment interest were, like prejudgment interest, a part of the underlying amount of damages, there would be no need separately to specify both sums in an execution.

c.  Purpose of punitive damages under G. L. c. 93A § 9 (3).
We recognize, as we have previously, that multiple damages awarded under G. L. c. 93A, § 9 (3), are punitive in nature.
See Rhodes, 461 Mass. at 498 ("There is general consensus among courts and commentators that the 1989 amendment [establishing the award of multiple damages] was intended to increase the potential penalties for insurers who engaged in unfair claim settlement practices"); id. at 503.  The statute is thus a "penal statute" akin to other statutes "designed to enforce the law by punishing offenders, rather than simply by enforcing

---

[9] Rule 54 (f) of the Massachusetts Rules of Civil Procedure, 382 Mass. 822 (1980), provides that where an "execution or order directing the payment of [a] judgment" is issued, the amount of "interest from the date of entry of . . . judgment to the date of [the] execution or order shall . . . be computed by the clerk, and the amount of such interest shall be stated on the execution or order."

restitution to those damaged."  See Collatos v. Boston

Retirement Bd., 396 Mass. 684, 686 (1986) (construing pension

forfeiture statute).

The trial judge included postjudgment interest in the

amount to be trebled based on his determination that the

"maximum available sanction" was warranted.  Thus, we consider

the plaintiffs' contention that the "amount of the judgment" to

be multiplied properly should include postjudgment interest, in

order to discourage defendants from "holding the verdict money

'hostage' during the appellate process" and to effectuate the

legislative purpose of providing an additional, substantial

sanction to discourage others from similar misconduct.

For several reasons, we conclude that the plaintiffs'

contention that the Legislature must have intended to include

postjudgment interest in "the amount of the judgment to be

multiplied" in order to protect injured parties against bad

faith appeals by insurance companies is unwarranted.[10]  The

_____

[10] Relying on Boyer v. Bowles, 316 Mass. 90, 95 (1944), as
did the Appeals Court, the plaintiffs argue that postjudgment
interest, while not computed when a judgment is entered, is part
of the judgment because it is definitively derived from a known
mathematical calculation based on the amount of the initial
award.  In 1944, this court observed that "the meaning of the
final decree is plain.  Though not computed, the amount of
interest to be paid was certain, on the principle that whatever
can be made certain by mere arithmetic is already certain.
Substantially the decree is as though the interest had been
computed and stated, and added to the principal."  Id.  That
case, however, predated the provision for multiple damages in

Legislature established the statutory twelve per cent postjudgment interest rate specifically to protect prevailing parties during the appellate process.  In addition, several other statutory and procedural means exist to discourage frivolous or bad-faith appeals.  See, e.g., G. L. c. 211A, § 15 (costs and interest for delay caused by frivolous appeal); G. L. c. 231, § 6F (awards of costs, expenses, and attorney's fees as sanction for advancing claim or defense found to be "insubstantial, frivolous and not advanced in good faith"); Mass. R. A. P. 25, as appearing in 376 Mass. 949 (1979) (damages and interest where delay result of frivolous appeal).  These also include G. L. c. 93A, § 9 (3), itself, claims under which may be triggered by postjudgment conduct.  See Rhodes, 461 Mass. at 495 (considering postjudgment violations of c. 93A).  Ultimately, we find it persuasive that the Legislature did not specify explicitly in the postjudgment interest statute that such interest is to be "added  . . . to the amount of damages," as it did with regard to prejudgment interest in G. L. c. 231, § 6B.

Moreover, under the rule of lenity, given the absence of an express textual provision or an indication of legislative

G. L. c. 93A § 9 (3), by more than forty years, and discussed both pre- and postjudgment interest.  The statement that the plaintiffs reference was made with regard to prejudgment interest. See Boyer, supra.

intent, G. L. c. 93A, § 9 (3), cannot be read implicitly to allow (or to require, as the multiplication of an award of damages for wilful misconduct is mandatory) doubling or trebling an award of postjudgment interest. See Libby v. New York, N.H. & H.R.R., 273 Mass. 522, 525-526 (1930).

In sum, the plaintiffs have advanced no reason other than further punishing a defendant whose violation was wilful or knowing to suggest that, in enacting G. L. c. 93A, the Legislature intended a departure from the treatment of postjudgment interest in other contexts. We therefore decline to read into the statute an additional measure of punishment that the Legislature did not set forth explicitly. Commissioner of Correction v. Superior Court Dep't of the Trial Court for the County of Worcester, 446 Mass. 123, 126 (2006) ("We do not read into the statute a provision which the Legislature did not see fit to put there, nor add words that the Legislature had an option to, but chose not to include").

3. Conclusion. The judgment is vacated, and the matter is remanded to the Superior Court for entry of a revised judgment, consistent with this opinion.

So ordered.